## FRANK H. MILLER v. C. C. BACON.

Eastern Section. June 20, 1930.

Curtin & Haynes, of Bristol, and J. L. Cantwell, Jr., of Johnson City, for appellant.

Sam W. Price, of Johnson City, for appellee.

SENTER, J.  This is a suit by complainant, Frank H. Miller, a real estate agent, of Bristol, Tennessee, to recover commissions alleged to be due and owing to complainant by the defendant, C. C. Bacon, growing out of the sale of defendant's farm.

The suit resulted in a decree in favor of complainant for the sum of $475 with interest thereon, a total of $529.62.  It appears from the record that on December 7, 1927, the defendant listed this farm with the complainant for sale under a written agreement.  By the terms of the written agreement the defendant gave to the complainant the exclusive right to sell the farm for the period of thirty days from the date of the agreement, at the net price to defendant of $9,500 cash, ''or for any less sum which the defendant might agree to accept.''  It was further provided that the defendant would pay to complainant commission in the event of a sale being made of the property by complainant within the thirty days' period, or on condition of the sale being made by defendant to anyone to whom the complainant should show the property.  The written agreement does not state the amount of commission to be paid.

Before the thirty days expired the complainant interested a prospective purchaser, and procured the prospective purchaser to go to see the property and also to see the owner, the defendant.  The prospective purchaser, T. H. Shuttle, went to see the defendant and to

look over the farm at the suggestion and request of complainant, and was, in fact, complainant's prospect for the purchase of the property, and procured solely by the complainant. When Shuttle called to see the defendant and to look over the property he informed the defendant that he had been sent there by complainant to look at the property with the view of purchasing same. He was then told by the defendant that the property was listed with complainant for sale for a period of thirty days, and that the thirty days would expire in a few days, and then agreed that he would meet Shuttle in IBristol. He postponed the date of meeting Shuttle in Bristol until about three days after the thirty days' period had elapsed. He and Shuttle then called on complainant, apparently for the purpose of ascertaining from complainant whether or not he would expect any compensation if the sale was made by defendant to Shuttle. The complainant stated to them that he would expect compensation. They left the office of complainant in Bristol and went to the office of the attorneys for the purpose of having a contract of sale between them drawn up. This contract was drawn up, by the terms of which the defendant agreed to sell the property to Shuttle for the consideration of $9,500. Shuttle to pay $6,000 cash and to assume the payment of an encumbrance debt on the property of $3500. After this contract was drawn up and signed the question arose between Shuttle and defendant as to the payment of commissions to Miller, the complainant, and because of the disagreement between them as to who would pay the commission to Miller the trade was apparently called off. It also appears that Shuttle was also the owner of a farm that he desired to sell. He communicated this fact to Miller when Miller first sought to interest him in the purchase of the property of defendant, and Miller then sought to list the property of Shuttle for sale, and was informed by Shuttle that another real estate agent, E. R. Shipley, would handle the matter of the sale of his property, and subsequently listed his property with Shipley for sale. After the disagreement with reference to the matter of the paying of commissions, or compensating Miller, the defendant and Shuttle went to see Shipley, Shuttle's real estate agent. There was a conference held between Shuttle and Shipley at Shipley's office, and this conference resulted in Shipley proposing to the defendant that he would pay him $5 for Shuttle's contract, and his name to be substituted for Shuttle's in the contract. The defendant accepted this suggestion and the change was made. Shortly thereafter Shuttle went to the home of defendant and informed him that he was ready to make the purchase according to the terms of the contract, and it was then agreed between Shuttle and the defendant that the cash consideration would be reduced from $6,000 to $3,000.

It also appears that the defendant insisted that he would make the deed to Shipley, whose name had been substituted in the contract, and that Shipley would in turn convey the property to Shuttle on the same terms. When Shuttle inquired of the defendant why the deed could not be made directly to him the defendant gave as his reason that he wanted to avoid trouble with Miller, referring to the matter of compensating Miller. Whereupon, the defendant and Shipley went to Shipley's office and Shipley agreed to let the deed be made to him and he would in turn convey to Shuttle provided there would be no cost to him in the matter of executing the deed. This was agreed to by the defendant, and the deed was made by defendant to Shipley, and Shipley in turn and at the same time conveyed to Shuttle, Shuttle paying the $3,000 cash consideration.

The facts as above set forth are in accord with the finding of the facts as found by the Chancellor.

The Chancellor also found the facts to be that the transaction by which Shipley was substituted in the contract for Shuttle, and the conveyances made in the way and manner that they were made, was so conducted with the wilful intention of the defendant to defeat the complainant from collecting any commission or compensation growing out of the listing of the property with him for sale. We concur in the conclusions reached by the Chancellor that the defendant at all times realized that Shuttle and not Shipley was the real purchaser of the property. Shuttle testified on this subject as follows:

"A. Mr. Shipley came to my house and said: 'I have sold your farm,' said, 'You go right on tomorrow morning to Johnson City and close the trade with Mr. Bacon for the farm.'

"Q. Did you do that? A. Yes, sir, I went the next morning.

"Q. At what price did you close the trade? A. At the same price we had agreed on the first trade, $9,500.

"Q. Was the deed executed to you? A. No, sir.

"Q. Haven't you got a deed for it yet? A. Yes, sir.

"Q. What do you mean by closing the trade? A. I went down there and told him that Mr. Shipley sold my farm and I would take his farm at $9,500, if he was willing to trade for it and he said the farm was for sale, that he didn't need the farm, but needed the money.

"Q. Was anything at that time said about Mr. Miller's commissions? A. No, there wasn't anything said, my recollection is that nothing was said that day, but he said 'I will come right on up and make a deed,' and did.

"Q. About what date was that he made the deed? A. On April 10, 1928, but before we got ready to make the deed, he said 'I will have to make Mr. Shipley a deed, and Mr. Shipley will make you a deed.'

"Q. Did he say why he would have to do that? A. Yes, sir, he stated to avoid trouble with Mr. Miller, and stated that there was more ways to do a thing than one."

From the above quoted evidence and the other facts and circumstances surrounding the whole transaction, we think it clear that the defendant knew and understood that Shuttle and not Shipley was the real purchaser from him. Shuttle paid the cash consideration and it was because of the insistence of the defendant that he make the deed to Shipley so as to have it appear that Shipley was the purchaser, and by this means defeat the claim of the complainant for commissions on the deal. We are also of the opinion that the facts and circumstances support the conclusion reached by the Chancellor that the defendant deliberately deferred making the contract for the sale of this property to Shuttle until after the thirty days had expired in an effort to defeat complainant in his claim for commissions.

We are further of the opinion that equity will treat Shuttle as the real purchaser, and that the fact that the defendant made the deed to Shipley, knowing that Shuttle was the real purchaser, and that Shipley would immediately convey to Shuttle, would not make Shipley the purchaser, at least in equity.

There is no question under the record but that the complainant procured Shuttle to become interested in the purchase of this property, and that he brought Shuttle and the defendant together, and initiated the negotiations resulting in the ultimate sale of the property to Shuttle.

In this situation we are of the opinion that the defendant cannot, by the methods resorted to by him, escape liability to the complainant for reasonable compensation. The entire trade could have been consummated within the thirty days' period, had it not been for the deliberate conduct of the defendant. He delayed the matter until after the thirty days expired, and we cannot escape the conclusion under the facts as disclosed by this record, that the delay was for the purpose of defeating complainant's right to compensation. In the well-considered case of Humphreys v. Smith (Ga.), 63 S. E., 248, it is said:

"If the agent produced the would-be purchaser ready, willing and able to buy within the time allowed, and his principal and the would-be purchaser, instead of presently consummating the transaction delay it by mutual consent until after the expiration of the agent's contract, he is nevertheless entitled to his commissions."

The rule on this subject is stated in 9 C. J., page 606, as follows:

"Where the parties stipulate that an agency to sell property is limited to a definite period, it terminates at the expiration of that time, unless the broker has found a purchaser able, ready,

and willing to buy the property within the time specified, or within such extension of time as may be granted by the principal, unless the principal waives performance within the time limit and accepts the services of the broker and treats the contract as still in force, or unless there is fraud or bad faith on the part of the principal to prevent performance within the time limit. . . ."

In the case of Zeimer v. Antisell, 75 Calif., 509, 17 Pac., 642, it was held that the fact that the agent first called the attention of the purchaser to the property does not entitle a broker to a commission where the sale is made by the owner after the expiration of the authority, unless the delay was caused by the negligence, fraud, or default of the owner. To the same effect is the case of Wilson v. Sturgis, 71 Calif., 226, 16 Pac., 772. Numerous cases are cited in support of the general proposition that if the agent procures an interested purchaser in the property within the time that he has the property listed for sale, and brings the proposed purchaser and the seller together, and the purchaser is ready, willing and able to purchase at the price at which the property is listed, but the seller, by his negligence, or his default, or his wilful intention to deprive the real estate agent of his commissions, delays the sale beyond the term for which the property was listed, the agent is entitled to recover his commissions. (Schnak v. Montano, 16 Hawaii, 805; Fultz v. Wimer, 34 Kan., 576, 9 Pac., 316; Decker v. Klingman, 149 Mich., 96, 112 N. W., 727; La Force v. Washington Univ., 106 Mo. App., 517, 81 S. W., 209; Locksley v. Studebaker, 75 N. J. L., 599, 68 Atl. 98; Vanderveer v. Suydam, 31 N. Y. S., 392, 151 N. Y., 673.)

Nor do we think that the fact that the property was ultimately sold on terms other than as specified in the contract between the owner and the agent, would alter the situation, where it appears that the owner and the purchaser entered into a written contract at the price mentioned in the contract listing the property with the agent, but afterwards agrees to alter the terms by accepting $3,000 cash as the cash payment in place of $6,000 cash, but the entire consideration remains the same, $9,500. This was the voluntary act of the seller, and could in no way affect the rights of the agent, who had procured the purchaser, ready, willing and able to purchase, at the price at which the property was listed. And for the further reason, that the contract between the seller and the agent made provision for the sale of the property at $9,500, or at a less price provided the seller agreed to it.

By one of the assignments of error it is insisted that the contract between complainant and defendant was merely an option contract whereby the complainant gave to the defendant an option to purchase the property within the limited period of thirty days, or to convey to the assignee of complainant. We do not think the contract, when

considered in its entirety, was intended as an option contract. The listing card or contract between the parties is made an exhibit to the evidence of Frank H. Miller, the complainant. It is brief and is as follows:

"Frank Miller Land Corporation.

"Bristol, Tenn.-Va.   Dec. 7, 1927.

"I hereby give you exclusive sale of my property described below for a period of thirty days from this date, at a price of $9,500 net, or any less sum which I shall agree to accept.   You to have the privilege of purchasing this property if so desired, and deed to be made to anyone you designate.   I pay you —————— if sold by you in thirty days, and if sold in thirty days by myself to anyone you have shown the property to in consideration of having given you this exclusive sale.   It is understood that you are to advertise and show property without expense to me until notified by me to quit.   Property, 118 located on road No. 34 near Bluff City.   Owner C. C. Bacon."

This document is referred to as the "Listing Card." It makes provision that if the property should be sold by the agent that a commission would be paid, the amount of the commission is not stated. It also makes provision that if the property is sold by the owner to a purchaser procured by the agent, that the commissions would be paid to the agent. This is the usual form on which property is listed with real estate agents for sale.

Another of the assignments of error contends that the property is not sufficiently described in the listing card or contract. If this were a suit seeking specific performance in the matter of conveying the property, this contention would contain merit. But there can be no doubt but that both parties to the contract, the complainant and the defendant, knew and understood by the description stated, the exact property which defendant was listing with complainant. The defendant did not at any time before the suit was brought make any question with the agent that this is not the identical property that he listed with the agent for sale. He does not make any question in the evidence or the pleadings that the property sold to Shuttle was not the property referred to in the listing card.

We have examined the authorities cited by appellant, but the cases and authorities relied upon are in no sense applicable to the facts as presented by this record.

Under the assignments of error it is further insisted that the court erred in decreeing a judgment in favor of complainant and against defendant in the sum of $475 and interest. It is not insisted that this is excessive, but it is said that complainant is not entitled to any recovery against the defendant under the facts of the record. The proof shows that five per cent is the usual and customary commission paid

to the real estate agent, and although the contract does not provide the amount of the commission to be paid, we think it clearly contemplates that the usual commission would be paid to the complainant. The sale price of $9500 would entitle the real estate agent to commissions amounting to five per cent, or $475 as decreed by the Chancellor. The matter of allowing interest is in the discretion of the trial court, and we find no abuse of the discretion of the trial court in the allowance of interest under the facts of this case.

We find no error in the decree, and the assignments of error are overruled, and the decree of the Chancellor is affirmed. Judgment will be rendered here for the amount of the judgment below, with interest thereon at the rate of six per cent in favor of complainant and against the defendant and sureties on the appeal bond, including the cost of this appeal.

Heiskell and Owen, JJ., concur.