# TOOLEY v. COOK.—262 S. W. (2d) 875.

Middle Section.  June 26, 1953.

Petition for Certiorari denied by Supreme Court, October 9, 1953.

Guy E. Yelton, of LaFayette, and Hugh C. Howser, of Nashville, for appellant.

C. R. Jent, of LaFayette, and H. B. McGinness, of Carthage, for appellee.

HOWELL, J. This is a suit by Burford H. Tooley, a real estate agent, for $2,500 commissions upon the alleged sale of real estate belonging to the defendant W. H. Cook, in Macon County, Tennessee, growing out of a contract entered into on January 21, 1952 as follows:

"This contract entered this day 1-31-52 between Burford H. Tooley and W. H. Cook owner of the following, farm real estate lying and being in the 1 district of Macon County.

Bounded on the following sides by

"North by Crowder

"South by #52 Highway

"East by White

"West by Gross

"I hereby authorize Burford H. Tooley to sell the above described property, the price being agreed to by both parties to be $35,000.00. Owner agrees to give satisfactory deed and title to the above described property, and agrees to pay Burford H. Tooley agent —— percent of the above amount or all over $35,-000.00 for his services.

"This property is to be exclusive with the above named agent for a period of 120 days from the above date.

"Signed: Burford H. Tooley, Agent
"W. H. Cook, Owner"

Upon the oral hearing the Chancellor found the facts in favor of the defendant and dismissed the bill. The

complainant has appealed and has assigned this action of the Chancellor as erroneous.

The finding of facts by the Chancellor is in part as follows:

"The bill was filed July 29, 1952, by Burford H. Tooley, a licensed real estate broker, to recover a commission of $2500.00 under a contract dated January 21, 1952, with the defendant W. H. Cook to sell his farm.

"Defendant denies liability. It is his insistence that the sale was not consummated, and that the failure of consummation was not his fault. Defendant claims that he was ready, willing and anxious to consummate the sale up until June 14, 1952, but that complainant did not furnish a purchaser who was able, ready and willing to close the deal.

"The written contract between Tooley and Cook, which is filed in the record, gave complainant exclusive authority to sell defendant's farm for a period of 120 days. The owner was to get $35,000.00, and Tooley was to get all over that amount as a commission for his services.

"Defendant had two serious operations in January and February 1952; he was critically ill for some time and was confined to his bed until April 17. He was brought home from the hospital after the last operation on February 9th.

"On February 11 Dr. John R. Smith, as a prospective purchaser, looked over the farm with Mr. Tooley, and later that day Tooley returned and told Mr. Cook that Dr. Smith had decided to buy the farm, and Cook stated that he would execute the deed when he was able. The complainant entered into a written contract with Dr. Smith on February 11, to sell him the

farm for $37,500.00. Tooley advised Cook of the contract and he stated that his interest was available and that as soon as he was able he would get his attorney to arrange matters, suggesting that minor details be discussed. Later when Tooley was at defendant's home Cook requested him to bring Dr. Smith out there with an attorney that he was ready to make the deed but that he was not physically able to go to LaFayette, which it appears Tooley agreed to do.

"On the following Saturday Cook went to La-Fayette to see his Doctor and went by Tooley's office and inquired why he had not been out to his house and Tooley gave a reason that Dr. Smith wanted his father-in-law there when the deed was made, and that he was waiting on him. Dr. Smith testified that his father-in-law had promised to furnish him the money to buy the farm.

"About May 20, Tooley visited Cook's home again and advised him that Dr. Smith was on his vacation. So it appears that the matter was deferred by mutual consent, and again about June 1, Cook told Tooley at LaFayette that he would still let Dr. Smith have the place if he wanted it. Tooley was at Cook's home again on June 10, and advised him why Dr. Smith had not been over. Whereupon Cook told him the trade would have to be closed by the following Saturday. Cook was to let his renter for 1953 know by a certain time whether he sold the farm. On the following Saturday Tooley was at Cook's home in the morning and told him that Dr. Smith's father-in-law was in Florida. Later in the day on Saturday, June 14th, Cook told Dr. Smith, about 1:00 o'clock, at his office in LaFayette, that if he wanted the farm the deed

would have to be made that day, to which Dr. Smith made no response.

"The proof shows that by that time Dr. Smith had 'cooled off' on the deal, and the following week Cook rented his place to Mr. Tony for the year 1953. Some effort was made thereafter by Mr. Tooley, but without success, to have him surrender his lease contract, and to try to get the deal through.

"The proof shows that Tooley did all he could do to consummate the deal, even after the written contract was obtained with Dr. Smith.

"I am of the opinion that under the facts of the case and the law that there can be no recovery. The contract executed by the parties contemplates commissions conditioned upon the consummation of the sale of the farm."

\* \* \* \* \* \*

"The weight of the proof in this case shows that the deal failed of consummation because the purchaser, Dr. Smith, 'cooled off' and did not desire to complete the transaction. The fact he was depending upon his father-in-law for the money may have contributed to his attitude in this respect. The preponderance of the proof does not show he was ready, able and willing. The burden of course in this respect is upon complainant.

"The preponderance of the proof does not show that the deal failed of consummation because of defendant's fault. On the contrary the proof shows that he was ready and willing to close the deal up until June 14th. The proof further shows that he was ready and willing before the expiration of the 120 days expired in the contract. It may be that his ill-

ness delayed or held up the negotiations for a time, and that after his improvement in health he was not anxious to consummate the deal, but there is no showing of bad faith or stalling on his part.

"For these reasons I am therefore of the opinion that the bill should be dismissed at complainant's cost."

We have carefully examined the entire record and the evidence does not preponderate against the facts as found by the Chancellor. It is clear from the record that the complainant did not produce a purchaser who was ready, willing and able to purchase the property.

In the case of Stone v. Coffman, 33 Tenn. App. 601, 232 S. W. (2d) 555, 557, this Court in an opinion by Howard, Judge, said in part:

"The law applicable here is stated in 8 American Jurisprudence as follows:

" 'To entitle a broker to the compensation called for by his contract of employment, he must produce a person who is ready, able and willing both to accept and live up to the terms offered by his principal. * * *' Sec. 174, p. 1090.

" '* * * The proposed purchaser must have legal capacity to purchase in addition to having sufficient financial ability not only to make the initial payment required to meet the terms of the seller, but also to complete the contract of purchase according to its terms, that is, to meet any deferred payments. To be able to pay does not simply mean that the purchaser have property upon which he could raise the amount of money necessary. A proposed purchaser is not able, when he is depending upon third parties who are in no way bound to furnish the funds, to make the purchase.' Sec. 175, p. 1091. See also, 1

A. L. R. 530; 167 A. L. R. 607; 12 C. J. S., Brokers, § 85, p. 187; Cheatham v. Yarbrough, 90 Tenn. 77, 15 S. W. 1076; Woodall v. Foster, 91 Tenn. 195, 18 S. W. 241; Miller v. Bacon, 12 Tenn. App. 123.''

█ In the old case of Cheatham v. Yarbrough, 90 Tenn. 77, on page 79, 15 S. W. 1076, the Supreme Court said:

''The just and well-settled rule of law requires that the agent shall be paid his compensation when he procures a purchaser who is acceptable to the principal, and ready, able, and willing to buy on the agent's terms, though, in fact, the sale be not ultimately consummated; provided its consummation is prevented by the fault, refusal, or defective title of the principal.''

It is insisted for the complainant that the defendant cannot raise the question as to whether or not the proposed purchaser was ready, willing and able to perform because a written contract was entered into between the proposed purchaser and the defendant through the agent, and this fact was communicated to defendant and the contract was approved by him.

In the case of McFadden v. Crisler, 141 Tenn. 531, 213 S. W. 912, 913, the Supreme Court said:

''We think it entirely clear that the contract of sole agency conferred by the owners upon defendant Johnson did not authorize him to make a contract of sale of any kind, and especially a contract of sale upon time.

\* \* \* \* \* \*

''We are also of opinion that the agency of Johnson did not authorize him to execute a contract to sell. His agency was to sell; that is, to find a purchaser

and consummate a deal.''

■ From an examination of this record we are satisfied that had Dr. John R. Smith been ready, able and willing to comply with his agreement to purchase, the trade would have been closed. However, he was relying upon his father-in-law to furnish a large part of the money and he had ample opportunity to get the money and failed to do so.

The Chancellor reached the correct solution of the controversy and therefore the assignments of error are overruled and the decree of the Chancellor, dismissing the bill is affirmed.

The appellant and the sureties upon the appeal bond will pay the costs.

Affirmed.

Felts and Hickerson, JJ., concur.