NEWMAN v. HILL.—196 S. W. (2d) 1008.

Western Section at Jackson. November 15, 1945.

Petition for Certiorari denied March 2, 1946.

Charles L. Keely and Lucius E. Polk, both of Memphis, for complainant.

Grover McCormick, of Memphis, for defendant.

KETCHUM, J. This is a suit in chancery to recover a real estate broker's commission. The case was heard on oral testimony pursuant to a stipulation in writing as provided by section 10564 of the code. The chancellor dismissed the bill and the complainant has appealed to this court.

The defendant was the owner of a suburban tract of 45 acres of land near Memphis. On May 25, 1944, he gave the complainant a sole agency contract authorizing him to sell the place for $25,000. This sole agency contract expired on June 15 but was extended in writing until August 15. There was an outstanding mortgage on the place for $13,750. Newman advertised the place for sale and showed it to prospective customers, and among others to one Melton Wright who owned what was known as the Thrifty Drug Store at the southwest corner of Madison Avenue and Cleveland Street in Memphis. O. W. Rice, a salesman in Newman's office, showed the place to Wright and Wright indicated to him that he would buy the place for $25,000, assume the outstanding mortgage of $13,750, and give his drug store clear of encumbrance and $2,000 cash in payment. He did not sign a written contract to buy the place on these terms as he said he wanted his brother who lived at Millington to see it first. Rice advised Hill of this tentative offer. This was on or before August 10. Hill went out and looked at the drug store, and on the same day he wrote to Rice: ''I did not ask you this morning, but I imagine this business is clear of debt, and that's the only way I would

consider taking it. You stated he made you an offer of $2,000 cash and this drug store. I might consider this if the $2,000 cash is net to me, and this would be your job to get him up so as to take care of your commission over and above the $2,000 . . ."

On August 12 (Saturday) Hill again wrote to Rice: "I trust that you will be able to do something on the deal with the drug store man as soon as possible, as you know your exclusive agency expires on the 15th of this month, and that's Tuesday midnight . . . I hope this letter reaches you before you leave for Chicago and for that reason I am sending it special delivery, addressing it jointly to you and Mr. Newman."

Rice went to Chicago about this time and was gone for several days. On Monday, August 14, Hill went to Newman's office and discussed the matter with Newman, and Newman tried to phone Wright but he was not at the drug store, so Newman left his phone number with the request that Wright call him. There is no evidence that Wright answered the call or that Newman made any further effort to get in touch with him.

The sole agency agreement expired at midnight the following night.

Wright had purchased his drug store from Jack Jamerson, a salesman in the office of E. H. Crump & Co. some three months before. On August 17 Wright went to see Jamerson and asked him to see Hill and make him an offer of $2,000 and the drug store free of encumbrance for Hill's equity in the farm property. Hill declined this offer, but on the following day Jamerson submitted to him a contract signed by Wright offering to give the drug store free of any indebtedness, assume the $13,750 mortgage, and pay $3,250 in cash for Hill's place. Hill accepted this offer. Jamerson did not know until after

this time that Rice had shown the Hill place to Wright, and Hill did not list his place with any other agent for sale. Jamerson first took the matter up with Hill at Wright's suggestion.

■ Newman's contention is that Wright was his customer, that he had shown him the Hill place and introduced him to Hill, and submitted to Hill a tentative offer; and that he was therefore the procuring cause of the sale and for this reason entitled to the commission for making the sale. Royster v. Mageveney, 77 Tenn. 148; Arrington v. Cary, 64 Tenn. 609.

It is not claimed that Newman submitted an offer for the place that was acceptable to Hill. The Jamerson offer netted Hill something over $2,000 cash after paying the broker's commission, and we think Hill had the right to accept it. After the expiration of the sole agency contract Hill had the right to deal with another agent. This is not a case of the owner stepping in and secretly closing the deal with the agent's customer for the purpose of escaping liability for the commission. The deal involved an exchange of properties rather than a sale, and Wright's agent, who came into the picture after Newman's sole agency expired, submitted the offer, and the only offer, that Hill was willing to accept.

Newman knew that Hill was in distress because of the mortgage on his place, and Hill was urging him to get a deal closed with Wright before the 15th when his sole agency expired. Hill very aptly stated his position in his letter to Newman dated Friday night (August 18), in which he expressed his regret that Newman and Rice had not made the sale, and in which he said:

"You all just failed to push and sell that man, and I tried to get Mr. Rice to go see him.

"Well anyway, I was in a sweat;—$13,750 owed on farm, owe George Abernathy $400, and you all $500. I had to sell and sell dam quick."

 The case is that of rival agents acting independently of each other and in which the one who first finds a purchaser satisfactory to the owner and completes the sale is entitled to the commission. Glascock v. Vanfleet, 100 Tenn. 603, 46 S. W. 449, 450, seems to us to be controlling. In that case the owner had the property listed with several brokers who acted independently of each other. Glascock was the first agent who had any negotiations with Vanfleet about the property, and he had several conversations with him about it, but Vanfleet did not make him any offer. The sale was made by Gilchrist & Company, another agent, and when Glascock learned that Vanfleet was about to deal with Gilchrist he notified him that he would claim a commission if he purchased the property through the Gilchrist agency. Vanfleet denied that he was entitled to a commission, but agreed to pay the commission if Glascock could establish his claim to it.

The court held that it was a race of diligence between the several agents which of them should find a purchaser and effect a sale, and it was said:

"When a principal employs more than one broker, and the several brokers act independently, and with knowledge of this fact, the one who first completes a sale is entitled to the commissions. . . .

"The same principle applies in all the cases, to wit, that the owner cannot interfere, but the several brokers are free to act independently of each other, and the owner is under no obligation to decide between their conflicting claims, but only to remain neutral as between them, and between them and the purchaser."

■ It is well settled by the authorities that complainant is not entitled to the commission merely because he introduced Wright to Hill as a prospective · purchaser before his sole agency expired; the rule in such cases is that the agent is not entitled to the commission unless the contract is obtained within the time limited. Everson v. Phelps, 104 Or. 288, 206 P. 306, 26 A. L. R. 780, and note, page 784. The annotation states at page 784: "It is a general rule supported by a great number of cases that a broker employed for a definite time to effect a sale of property must perform whatever obligations the contract imposes upon him within the time limited; if he does perform such obligations, he is entitled to his commissions; if he fails to perform within the time, he cannot recover commissions."

Under the facts as stated, about which we find no serious conflict in the evidence, we are of opinion that the complainant is not entitled to recover, and the decree of the chancellor will be in all respects affirmed and the bill dismissed. The costs will be adjudged against the complainant and the sureties on the appeal bond.

Anderson, P. J., and Baptist, J., concur.