ALBERT ROBINSON and OLA ROBINSON, Plaintiffs
in Error, v. KEMMONS WILSON REALTY COM-
PANY (a Corporation), Defendant in Error.
—293 S. W. (2d) 574.

Western Section at Jackson.  May 18, 1956.

Petition for Certiorari denied by Supreme Court, September 3, 1956.

Rehearing denied by Supreme Court, October 5, 1956.

Graham Moore and Robert L. Dobbs, Memphis, for plaintiffs in error.

Martin & Tate and George E. Morrow, Memphis, for defendant in error.

BEJACH, J. This cause involves a suit by Kemmons Wilson Realty Company, a corporation, against Albert Robinson and Ola Robinson, his wife, for a real estate commission claimed to have been earned through the activities of John Wade, an employee of plaintiff, in procuring a sale of defendants' residence at 3271 Barron Road, Memphis, Tennessee, to Mr. and Mrs. E. V. Fondren. The parties will be styled as in the lower court, plaintiff and defendants, or by their individual names.

The evidence is practically undisputed, the only difference between the testimony of John Wade, plaintiff's only witness, and that of the defendant Albert Robinson, being as to whether defendant Robinson reduced his price from $24,500 to $23,500 or to $23,000. Wade testified that the reduction was to $23,500, while Robinson testified that he reduced his price to $23,000. This difference of $500 is not particularly material, but we think the greater probability lies with the correctness of Robinson's memory on this figure, rather than with Wade's, and especially so in view of the method of reasoning by which Robinson arrived at the figure. Robinson testified that he had asked $24,500 for his property, had received an offer of $21,500, and that he was willing to reduce his figure $1,500 if Wade's prospect, Mr. E. V. Fondren, would increase his offering price by the same amount. In other words, he was willing to split the difference. The materiality of this figure lies, not in the amount of same, but in the fact that Robinson offered to accept $23,000 for his property, and to pay to plaintiff a commission for the sale, but refused to accept the offer of $21,500 out of which he would have to pay a commission. About three weeks after he refused this offer, the Robinsons did sell to Mr. and Mrs. Fondren for $21,500, which he assumed would be net to him.

A more complete statement of the facts established by the testimony of John Wade who was plaintiff's only witness, and from that of defendants Albert Robinson and Ola Robinson, and Edgar V. Fondren who testified on behalf of defendants, is as follows:

In July, 1954, the Kemmons Wilson Realty Company was given an exclusive agency by defendants Albert Robinson and Ola Robinson for the sale of their home at 3271 Barron Road, Memphis, Tennessee, in order to enable the Robinsons to purchase a home from Kemmons Wilson Realty Company if their home on Barron Road could be sold. This deal did not materialize, however, and the sole agency contract was terminated. It is conceded by plaintiff that its right to the commission claimed in the instant case is not affected by this sole agency contract, but rests entirely upon the subsequent introduction of Mr. and Mrs. Fondren as a prospective purchaser by Mr. Wade. The sole agency terminated in August, 1954. Thereafter, about the 28th or 29th of October, 1954 when Mr. Wade, one of plaintiff's salesmen, learned that Mr. E. V. Fondren was interested in the purchase of a house in the area where Mr. Robinson's home was located, he called Mr. Robinson at his business address in West Memphis, Arkansas, and asked if he wanted to sell his house. To this inquiry Mr. Robinson replied that he would sell it for $24,500. This was the same price at which the house had been listed under the sole agency agreement. Permission was given to take Mr. and Mrs. Fondren out to the house and show it to them, but only at and for the selling price of $24,500. Mr. Wade did take Mr. and Mrs. Fondren out to the Robinson home and showed it to them, having been admitted by Mr. and Mrs. Robinson's children. Mrs. Robinson returned

home from work while the Fondrens and Mr. Wade were still at the Barron Road home. As a result of this showing, Mr. Fondren offered $20,000 for the home, which Mr. Robinson refused. This offer was subsequently raised to $21,500,—whereupon, Mr. Robinson lowered his price to $23,000 and offered to take that sum and pay a commission out of it.

After three days of negotiation conducted through Wade, Mr. Robinson told Wade not to return again with a $21,500 offer, and to "Forget the deal".

About three weeks later, Mr. Fondren reopened negotiations by calling Mrs. Robinson and asking if she would not change her mind about selling her home, she having stated in connection with the previous negotiations that she did not wish to sell the home at all. As a result of this call by Mr. Fondren, the parties got together and the Robinson did agree to and did sell to the Fondrens their home at 3271 Barron Road, Memphis, Tennessee, for the sum of $21,500.

Demand was made by Kemmons Wilson Realty Company for a commission on this sale, which demand was refused. The present suit was thereupon instituted and tried in the Circuit Court of Shelby County before Hon. A. O. Holmes, Judge, without the intervention of a jury. At the end of the proof, the trial judge made the following finding of fact:

"I think that the efficient procuring cause of the sale from the Robinsons to the Fondrens on the 23rd of November, was the efforts of the witness, Mr. Wade, in bringing the parties together, and that the property was sold to the Fondrens, and that the reason it was sold to them for $21,500 instead of the first

figure, was in the hope that somebody would not have to pay the commission.''

Judgment was entered in favor of plaintiff for the sum of $1,075, which represented 5% of the sale price of $21,-500. After a motion for a new trial was overruled, an appeal in the nature of a writ of error was perfected to this Court.

■ ■ Under the provisions of Section 27-303, Tenn. Code Ann. (10,622, Williams Code) this cause is before this Court for a hearing de novo on all questions of fact and of law, with the presumption of the correctness of the judgment of the trial court, unless the preponderance of the evidence is otherwise. In view of the fact, however, that there is no conflict in the evidence as to any material fact, we think the questions presented to this Court by the appeal are entirely questions of law. Ward v. Southern R. Co., 15 Tenn. App. 380; Tennessee Electric Power Co. v. Van Dodson, 14 Tenn. App. 54; Stafford v. Consolidated Bus Lines, 179 Tenn. 185, 164 S. W. (2d) 15; Mayor and Aldermen of City of Knoxville v. Cain, 128 Tenn. 250, 159 S. W. 1084, 48 L. R. A., N. S., 628; Southeastern Greyhound Lines v. Smith, 23 Tenn. App. 627, 136 S. W. (2d) 727; Hill v. Castner Knott Dry Goods Co., 25 Tenn. App. 230, 166 S. W. (2d) 638; Schindler v. Southern Coach Lines, 188 Tenn. 169, 217 S. W. (2d) 775; Sing v. Headrick, 34 Tenn. App. 187, 236 S. W. (2d) 95; Little v. Nashville C. & St. L. Ry. Co., Tenn. App., 281 S. W. (2d) 284, 293.

In our opinion, this cause turns almost entirely on whether or not negotiations between defendants and the Fondrens, after the introduction of the Fondrens by Wade, were broken off in good faith, and, therefore, whether or not the sale was the result of new and inde-

pendent negotiations. Counsel for plaintiff concedes the absence of bad faith on the part of Mr. and Mrs. Robinson. He plants his case upon the proposition that the bringing together of the Robinsons and the Fondrens by Mr. Wade was the efficient procuring cause of the sale; and he maintains that it is unnecessary for the plaintiff to show as a part of its case that there was any bad faith, fraud, sharp practice, overreaching, or attempt to overreach the plaintiff in order to sustain a recovery. On the other hand, it is conceded by defendants that they had never heard of the Fondrens until they were introduced by Mr. Wade, and that, but for this introduction, they would never have had any contact with nor opportunity for sale of their house to the Fondrens. They contend, however, that since the plaintiff did not effect a sale of their property on the terms authorized and within the time that plaintiff was authorized to negotiate for such sale, that they, defendants, had a perfect right to make an independent deal with the Fondrens wtihout becoming liable for any commission to plaintiff.

We deem it unnecessary to refer to cases outside of Tennessee. There are a number of such cases in Tennessee involving suits for real estate commissions, and it is the opinion of this Court that in those cases where the recovery of a commission was awarded to the real estate broker, such recovery was based either on the express terms of the contract with the broker, or resulted from some element of bad faith, sharp practice, fraud, or attempt to overreach the broker.

Plaintiff's counsel in his brief cites and relies on Arrington v. Cary, 64 Tenn. 609; Gilbert v. Smith, 14 Tenn. App. 500; Glascock v. Vanfleet, 100 Tenn. 603, 46 S. W. 49; Nance v. Smyth, 118 Tenn. 349, 99 S. W. 698; Peavy

v. Walker, Tenn. App. 284 S. W. (2d) 1; Pyles v. Cole, 34 Tenn. App. 601, 241 S. W. (2d) 841; Royster v. Mageveney, 77 Tenn. 149; Newman v. Hill, 29 Tenn. App. 388, 196 S. W. (2d) 1008, and the unreported decision of our Supreme Court in the case of Marx and Bensdorf v. Hall (opinion filed January 15, 1938). Many of these cases are also cited and relied on by counsel for defendants, and most of them are cited in the unreported opinion of the Supreme Court in the case of Marx and Bensdorf v. Hall,—further reference to which opinion will be made.

In the case of Arrington v. Cary, 64 Tenn. 609, Cary, the owner of the property involved, had listed same for sale with Arrington and Farrar, real estate brokers in Nashville, and directed them to sell for $13,000, one-third cash and the remainder in one and two years with interest. These brokers showed the property in question to M. M. Bryan, Jr. and communicated that fact to Cary. Cary then saw Bryan and went with him to examine the house. Shortly thereafter, Cary sold the house and lot to Bryan for $10,050. Arrington and Farrar sued for commissions on this deal and recovered. In the Supreme Court the cause was held to turn on the correctness of the trial judge's charge to the jury. We quote from the Supreme Court's opinion, as follows:

"The Court charged the jury in effect, that if Cary employed Arrington and Farrar to sell his house and lot, and that they secured a purchaser who afterwards effected a trade with Cary at a reduced price, the agents would be entitled to reasonable compensation for their services, according to the usage and custom of real estate agents in Nashville for similar services under similar circumstances.

"The charge of the judge is correct.

"When a broker is employed to sell real estate and produces a person who ultimately becomes a purchaser, he is entitled to his commissions although the trade may be effected by the owner. Kimberly v. Harrison, 29 Md. 512, 513; Richards v. Jackson, 31 Md. 250, 1 Am. Rep. 49.

"When the owner employs the agent to sell or to assist him in the sale, if he is unwilling to pay the usual and customary commissions he should have made a special contract with him, otherwise the agent will be entitled to such reasonable commissions as, for similar services, real estate agents in that particular locality are by usage and custom entitled." Arrington and Farrar v. Cary, 64 Tenn. 609, 611.

In the instant case, Robinson did exactly what the Supreme Court, in Arrington v. Cary, said a landowner should do to protect himself against having to pay commissions, viz., he limited the authority of Wade when Wade called him at West Memphis, by permission to show the house at and for the sum of $24,500, only. Later he reduced this price to $23,000, accompanied by an expression of willingness to pay commissions if a sale was made at that figure; but he never obligated himself for commissions on any smaller amount, and when this proposition was not accepted, he told Wade to forget the deal. This, in our opinion, he had a perfect right to do, unless he was dissembling with Wade, and intended to resume negotiations with the Fondrens without the assistance of Wade. The undisputed evidence discloses that such was not his intention. On the contrary, when negotiations were actually resumed some three weeks later, it was not because of any effort to that end on the part of Robinson. Instead, it was Fondren who called Mrs. Robinson and

asked her to change her mind. The argument that the sale was actually effected at the same price offered by Wade is also, in our opinion, not sound.

The case of Gilbert v. Smith, 14 Tenn. App. 500, involved a suit for commission resulting from an exchange of properties. Defendant Smith had listed his property with the real estate broker, Gilbert. Gilbert had secured the purchaser with whom the trade was later completed, as the result of negotiations concluded independently and wtihout the assistance of Gilbert. In this case, the parties recognized the right of the real estate broker to a commission and had offered to pay a reasonable commission, but Gilbert had insisted on $1,500 as the amount due him. The amount actually recovered by him, however, was only $693.75. In addition, the opinion in this case, written by Crownover, J., says:

"The proof fails to show a revocation of authority to Gilbert to sell the properties and negotiations later taken up by the parties. It appears that both parties started the negotiations with the values of their respective properties greatly exaggerated, but finally settled at a basis on which they could trade; that this was not a subsequent trade but the outcome of the original negotiations." Gilbert v. Smith, 14 Tenn. App. 500, 507.

In Glascock v. Vanfleet, 100 Tenn. 603, 46 S. W. 49, the real estate broker was held not entitled to collect the commission, because he had had no exclusive agency, and another and more diligent agent had been the one who actually presented the contract for the seller's signature.

In Nance v. Smyth, 118 Tenn. 349, 99 S. W. 698, a judgment of the Circuit Court in favor of the real estate

broker was reversed on the ground that the broker did not have an exclusive agency, and that the seller had a right, therefore, to negotiate a sale independently. It is true the facts of that case are somewhat weaker than those of the instant case, because the broker in Nance v. Smyth had not communicated the name of his prospect to the owner, and the prospect got in touch with the owner through introduction of his brother. In that case the opinion of the Supreme Court, written by Mr. Justice Neil, says:

" 'The owner had not debarred himself from making the contract. He had not given an exclusive agency to Mr. Carpenter. So we have the case of an owner, who had reserved to himself the right of sale, simply making a sale to a purchaser who came to him directly,' " etc. Nance v. Smyth, 118 Tenn. 349, 356, 99 S. W. 698, 699.

In Royster v. Mageveney, 77 Tenn. 148, a recovery in favor of the real estate broker was affirmed by the Supreme Court, and the charge which the trial judge had given to the jury was approved. We think this case contains a correct statement of the law of Tennessee applicable to such cases. We quote from the opinion of Deaderick, C. J., in that case, as follows:

"Again the Court said to the jury, you must be satisfied plaintiffs were the efficient agents in, or procuring cause of the sale, and when the broker has commenced a negotiation for the sale, the owner can not deprive him of compensation by taking that negotiation out of his hands and completing the sale himself. The law of the case was in these several propositions, submitted to the jury in all its material aspects." Royster v. Mageveney, 77 Tenn. 148, 150.

The crux of the situation, when we come to apply the rule announced in Royster v. Mageveney to the facts of the instant case, is that, in the instant case, the defendant Albert Robinson did not take the negotiations out of the hands of Wade for the purpose of concluding a sale to the Fondrens. He took it out of Wade's hands, or out of the hands of Kemmons Wilson Realty Company, because Wade's prospect was unwilling to meet the terms on which Robinson was willing to sell and pay a commission. The argument that Robinson did sell some three weeks later to the same prospect for exactly the sum which Wade had submitted in his behalf is, also, in our opinion, not sound. The difference is that the offer submitted by Wade would have been subject to a commission of $1,075, and therefore would have netted Robinson only $20,425. Robinson had offered to accept $23,000 and pay a commission out of that, which commission would have amounted to $1,150, thus netting Robinson $21,850 which is only $350 more than he did actually receive when he sold direct to the Fondrens, with the expectation of having to pay no commission.

In Newman v. Hill, 29 Tenn. App. 388 196 S. W. (2d) 1008, the suit of the real estate broker was dismissed by the Chancery Court and that dismissal was affirmed by the Court of Appeals, with certiorari denied by the Supreme Court. We quote from the opinion of Ketchum, J., in that case, as follows:

"This is not a case of the owner stepping in and secretly closing a deal with the agent's customer for the purpose of escaping liability for the commission. The deal involved an exchange of properties rather than a sale, and Wright's agent, who came into the picture after Newman's sole agency expired, sub-

mitted the offer, and the only offer, that Hill was willing to accept. * * * It is well settled by the authorities that complainant is not entitled to the commission merely because he introduced Wright to Hill as a prospective purchaser before his sole agency expired; the rule in such cases is that the agent is not entitled to the commission unless the contract is obtained within the time limited." Newman v. Hill, 29 Tenn. App. 388, 391-393, 196 S. W. (2d) 1008, 1009.

The author of this opinion was the Chancellor who dismissed Newman's bill against Hill. The bill in the lower court was dismissed primarily on the ground that Hill was completely free from any fraud, sharp practice, or attempt to overreach Newman or his agent, Rice, in the transaction. This ground of dismissal is not emphasized in the opinion of the Court of Appeals written by Ketchum, J., but the following language does appear in that opinion, which is at least consistent with that theory of dismissal, and which is directly applicable to the facts of the case at bar. We quote:

"Newman advertised the place for sale and showed it to prospective customers, and among others to one Melton Wright who owned what was known as the Thrifty Drug Store at the southwest corner of Madison Avenue and Cleveland Street in Memphis. O. W. Rice, a salesman in Newman's office, showed the place to Wright and Wright indicated to him that he would buy the place for $25,000, assume the outstanding mortgage of $13,750, and give his drug store clear of encumbrance and $2,000 cash in payment. He did not sign a written contract to buy the place on these terms as he said he wanted his brother who lived at Millington to see it first. Rice advised Hill of this

tentative offer. This was on or before August 10. Hill went out and looked at the drug store, and on the same day he wrote to Rice: 'I did not ask you this morning, but I imagine this business is clear of debt, and that's the only way I would consider taking it. You stated he made you an offer of $2000 cash and this drug store. I might consider this if the $2000 cash is net to me, and this would be your job to get him up so as to take care of your commission over and above the $2000 * * *.' '' Newman v. Hill, 29 Tenn. App. 388, 389-390, 196 S. W. (2d) 1008.

In the instant case, we can not, of course, be certain that Robinson would have authorized Wade to sell his property for $21,500 net to him (Robinson), because that figure is $350 less than the best proposition which Robinson did make to Wade; but it seems to us more than probable that such a proposition would have been acceptable. In any event, that is exactly what did happen in the case of Newman v. Hill; and the transaction was concluded through another agent on exactly the terms which Hill had offered through Newman's firm. In the instant case, no new or additional real estate broker entered the transaction, but Robinson, acting for himself, after he had been approached by the Fondrens, concluded a deal which was only $350 worse for him than the one which he had authorized Wade to make.

The case of Pyles v. Cole, 34 Tenn. App. 601, 241 S. W. (2d) 841, involves a case where the real estate broker who had a sole agency contract for a limited time which had expired, continued to show the property and a sale was effected to a prospect whom the broker had introduced after the expiration of his sole agency contract. The recovery by the broker was affirmed on the ground that

there had been an extension by implication of the authority which the broker had during the period of his sole agency contract.

The case of Peavy v. Walker, Tenn. App., 284 S. W. (2d) 1, is cited and relied on by counsel for appellee as authority for sustaining the judgment of the Circuit Court. We think it is authority for the position taken by this Court in the present opinion. In that case the defendant entered a contract with complainant, a duly licensed real estate broker, giving complainant the exclusive right to sell defendant's property within a period of thirty days. The broker in question produced a prospect who was interested but preferred, on the advice of his tax expert, to lease, rather than buy the property. The defendant refused to consider a lease until after the sole agency contract had expired; whereupon, within four or five days thereafter, he did conclude a lease contract with the prospect introduced by the broker,—which lease contained an option to buy. The Chancellor, before whom the cause was tried in the lower court, entered a decree in favor of the broker, awarding a conditional decree for a 5% sale commission in the event defendant exercised his option to purchase at the end of the three years from the date of the lease. The decree of the Chancellor was affirmed by the Court of Appeals (Eastern Section) on the ground that the defendant had deliberately undertaken to overreach the real estate agent by waiting until after the expiration of the sole agency contract, before considering the matter of leasing instead of selling the property. From the opinion by McAmis, P. J., we quote:

"We think it is significant that defendant became interested in leasing the property only four or five days after the contract with complainant expired al-

though in conversation with complainant, he had steadfastly asserted his unwillingness to lease the property under any conditions. Whether he was holding off hoping to sell to Cobble, we do not know but, whatever the reason, we agree with the Chancellor that it would be most inequitable to allow him to take the benefit of complainant's efforts without compensation. Bryan's interest in the property continued from the day it was first shown to him by the complainant until the lease contract was executed. He testified that he would have attempted to buy the property except that from a tax standpoint it appeared more advantageous to lease it. Defendant admits that, in contrast to his refusal even to consider a lease during the period of the listing, he was thereafter able to come to an agreement within four or five days and following a discussion with the lessee of only about two hours duration. It taxes credulity to believe that, in a transaction of such magnitude, defendant would completely reverse his thinking and come to a final decision in such a short time. After the lease contract was executed it was withheld from registration for many months and the lessee seems to have been somewhat evasive in replying to inquiries from complainant as to whether he had bought the property. Defendant, it seems from the circumstances, waited only long enough to see if he could sell to Cobble and to permit the listing to run out before executing a lease which we have no doubt was due to the efforts of complainant." Peavy v. Walker, 284 S. W. (2d) 1, 3-4.

The authority cited in this cause which we think is most nearly identical on its facts with the case at bar

is the manuscript opinion of the Supreme Court in the case of Marx and Bensdorf, Inc. v. Hall filed January 15, 1938. This opinion was written by Cook, J. It is not a long opinion, and inasmuch as we think it announces principles not elsewhere clearly enunciated, we will copy same in full, as follows:

"In the Supreme Court of Tennessee
At Jackson

"Marx & Bensdorf, Inc.
v.
Dr. Frank J. Hall et al.

Shelby Equity
Filed January 15, 1938.

## Memorandum

"This controversy involves transactions between complainant and the defendants Simpson and Hall, which began January 5, 1934, when Hall employed complainant to sell an Arkansas plantation which he listed at the price of $35.00 an acre. Hall and F. W. Snepp owned the plantation as tenants in common. Hall appointed complainant as agent to sell the property by a written contract which limited the agency to 90 days. But the last paragraph of the contract contained a provision that:

" 'If the said property be sold or disposed of during the period above stated, no matter by whom or in what manner (or after the above period on information obtained through this agency), I agree to pay Marx & Bensdorf, Inc., a commission.'

"The complainant advertised the property and D. L. Simpson, a resident of Memphis, attracted by the advertisement, inspected it and offered to buy subject to a $4,000 mortgage debt, for $4,000 cash and the exchange of two residences, one on Courtland Street and another

on Pasadena Avenue, Memphis. When complainant presented Simpson's offer to Hall, he rejected it, saying the value put on the Memphis property was excessive. But Hall suggested to complainant's representative, Mr. H. H. Marx, that he bring about a trade between Simpson and Snepp. Negotiations to that end were commenced on September 4, 1934, and resulted in Snepp's conveyance of his half interest in the plantation to Simpson and Simpson's conveyance of the Courtland Street residence to Snepp. In this transaction, complainant, as agent for Snepp, received a commission on the sale price of his half interest in the plantation, and, as agent for Simpson, a commission on the exchange value of the Courtland Street house. The trade was closed September 4th, one day before the expiration of complainant's agency under the Hall contract. November 24th, defendant Hall traded his interest in the plantation to Simpson, who, in the same transaction, conveyed the Pasadena house to Hall. The complainant claimed a broker's commission on both transfers and the bill was filed to enforce payment. The defendants, by their answers, denied liability for the commissions. Issues were made up and cause was presented to the chancellor and a jury. Upon conclusion of the evidence the chancellor withdrew the issues and entered a decree against both defendants. The Court of Appeals affirmed the decree of the chancellor. Writs were granted and the cause is here upon certiorari and assignments of error to review the judgment of the Court of Appeals.

''Complainant had no written contract with Simpson and there was no employment prior to Simpson's offer to trade the Memphis houses for the plantation. Simpson's property became involved by his offer to trade it and as a result of the transfer of the Courtland Street

house to Snepp on September 4th. Simpson paid the commission on the exchange value of the house. Mr. H. H. Marx, referring to Simpson's offer for the Hall and Snepp property before Hall rejected it and before Simpson's trade with Snepp, said that he remembered a discussion with Simpson before that deal was made in which they agreed on a certain commission and that it was his understanding that Simpson was to pay the regular commission on the exchange value of the houses in the event of their transfer to Hall and Snepp. The trade was not made with Hall and Snepp because Hall rejected the offer. Subsequently, Simpson traded one of the houses for Snepp's half interest. There is no evidence of any subsequent conversation between Mr. Marx and Simpson that could be construed as an appointment of complainant as agent to sell Simpson's Pasadena house. Whatever relation existed between defendant Simpson and complainant, ended with the transaction between Simpson and Snepp.

"The chancellor should have sustained defendant Simpson's motion to withdraw the issues and as to him, should have dismissed the bill. The right of a real estate broker to a commission is dependent upon a contract of employment and upon service under the contract before its termination, a service which proximately results in a sale. Arrington v. Cary, 5 Baxt. 609; Royster v. Mageveney, 9 Lea 148; Glasscock v. Vanfleet, 100 Tenn. 603, 46 S. W. 449; Nance v. Smyth, 118 Tenn. 349, 99 S. W. 698; Parker v. Walker, 86 Tenn. 566, 8 S. W. 391; Gilchrist v. Clarke, 86 Tenn. 583, 8 S. W. 572; Cheatham v. Yarbrough, 90 Tenn. 77, 15 S. W. 1076; Miller v. Bacon, 12 Tenn. App. 123.

"The rule generally applied is that the owner cannot delay consummation of the transaction until after termination of the agency and avoid liability for the commission upon a sale subsequently made to a purchaser produced by the agent. That rule is not peculiar to real estate brokers; it extends to all transactions involving fraudulent attempts to avoid contractual obligations. But, where no sale was made by the agent before termination of the agency, the owner may sell to a purchaser without liability for the broker's commission, if the owner acts in good faith without hindrance or interference of the agent in closing the sale before the agency terminated. The provision in complainant's contract with Hall, relied on to support the claim for a commission for the sale of the half interest in the plantation to Simpson November 24, 1934, was designed to assure compensation for service rendered by the broker under the contract before its termination, a service which operated as the inducing or procuring cause of the sale. See Leicht-Benson Realty & Const. Company v. Stone, 138 Va. 511, 121 S. E. 883, 43 A. L. R. 1100, and annotations. Such a provision in a contract employing a broker cannot be construed as definitely fixing liability for the commission without reference to whether or not service was rendered and the service was the producing cause of the sale. Other matters to be considered in determining the right of the agent to a commission for service rendered after termination of the sale, are:

"(1) Nearness of the completion of the sale by the broker when the agency terminated;

"(2) Whether negotiations through the broker were in good faith terminated by the owner;

"(3) Whether the subsequent sale bears relation to and was a sequence of the broker's introduction of the buyer to the owner;

"(4) Whether the owner delayed the sale until after termination of the agency to avoid the broker's commission;

"(5) Whether the purposes of the agency were accomplished and the agency terminated in good faith before expiration of the broker's authority to sell;

"(6) Whether or not as a result of the changed conditions, the owner and a subsequent purchaser, without reference to the introduction of the purchaser by the agent, entered into the subsequent contract of sale.

"Any or all of these elements are to be considered in determining whether or not the broker was the procuring cause of the sale, for, after all, the right of a broker to collect the commission is dependent upon whether the broker actually made the sale or was the procuring or introducing cause of the sale. See Notes II and V, under Everson v. Phelps, 104 Or. 288, 206 P. 306, 26 A. L. R. 789, and cases cited.

"The defendant Hall insisted that the negotiations and his relation with the complainant ended when he rejected Simpson's offer presented through complainant prior to September 4th and that the subsequent sale to Simpson bore no relation to his introduction by complainant. Hall testified that Simpson's offer prior to September 4, 1934, was rejected because of the excessive price put on Simpson's Memphis houses and in that, he is corroborated by Simpson and Mr. Marx. He also testified that upon rejecting the offer, he suggested to Mr. Marx that he en-

deavor to make a sale of Snepp's half interest to Simpson and in that, he is corroborated by Mr. Marx. Hall also testified that after Simpson purchased Snepp's interest, he preferred to go along with Simpson as a partner, keep the property because it had been listed at a price below its value, and that he and Simpson agreed that they would operate the property jointly. Hall testified that after the sale of Snepp's interest, he considered the purposes of the agency accomplished, so informed Mr. Marx, and that the agency was terminated. There is evidence that Hall listed the property for sale because of Snepp's financial embarrassment. Both Hall and Simpson testified that at first both were satisfied to operate the farm as partners, but soon after a disagreement arose between them as to the agency that should carry the fire insurance on the farm buildings. Later, a more serious controversy arose about the erection of a stock barn and garage on the farm at a cost of $1,000.00. Hall was unwilling to incur the expense, while Simpson insisted that the building should be erected. Because of these differences, both defendants testified that each offered to sell his interest to the other and after negotiations Hall accepted Simpson's offer of $4,000.00 cash, the conveyance of the Pasadena Avenue house and the assumption by Simpson of Hall's half of the $4,000.00 mortgage debt. Hall testified that in this transaction he realized $2,100.00 more for his interest in the farm than the offer through Marx & Bensdorf prior to the sale of Snepp's interest. These facts present issues that should have been submitted to the jury. They involve an inquiry into the intention of the parties and especially into Hall's purpose in rejecting Simpson's first offer and later selling to him in November. The chancellor should have submitted the issues:

"1st. Was the information obtained by defendant Hall from complainant, while acting as his agent prior to September 5, 1934, the procuring, efficient cause of this trade with defendant Simpson on November 24, 1934?

"2nd. Was Marx & Bensdorf Inc., while acting under the employment as broker, the moving and efficient cause of the exchange of property between defendant Hall and Simpson November 24, 1934?

"In this connection, another pertinent issue would have been whether or not defendant Hall interrupted the negotiations or rejected the first offer, with intent to delay sale by complainant so as to avoid liability for the commission.

"The foregoing conclusions rest upon principles announced in the decisions cited, including those of our own Court's.

"Reversed and dismissed as to Simpson, and, as to Hall, reversed and remanded for submission of issues of fact to the jury.

"S/ Cook, J."

Applying the principles announced in the above quoted opinion, we think that if the instant case had been tried before a jury, the Robinsons would have been entitled to have had submitted to the jury the same three issues which the Supreme Court held should have been submitted in the case of Dr. Hall, and which issues we paraphrase into the language of the instant case, as follows:

(1st) Was the information obtained by defendants Robinson from Kemmons Wilson Realty, Inc., while acting as their agent prior to November, 1954, the procuring, efficient cause of their trade with the Fondrens in November, 1954?

(2nd) Was Kemmons Wilson Realty Company, while acting under its employment as broker, the moving and efficient cause of the trade between defendants Robinson and the Fondrens in November, 1954?

(3rd) Did the defendants Robinson interrupt the negotiations being conducted by their agent, Wade, or reject the offer submitted by Wade, with intent to delay sale to the Fondrens, so as to avoid liability for a commission?

Since there was no jury in the instant case, and since the cause is being heard de novo in this Court, unless the evidence preponderates the judgment, it is our opinion that the evidence does so preponderate and that these issues should have been found in favor of defendants.

The principles hereinabove announced are completely in harmony with the opinion of this Court written by Avery, P. J., in the case of Bell v. Strauch, 292 S. W. (2d) 59, which opinion was filed Sept. 23, 1954, certiorari denied by the Supreme Court, March 11, 1955. The result reached in the instant case is also in complete harmony with an unreported decision of this Court written by Baptist, J., in the case of Barnett v. Parham, filed December 15, 1947,—certiorari denied by the Supreme Court June 12, 1948. In that case, as in the instant case, the owner completed, at a subsequent date, an independent sale of his property to a prospect who had been originally introduced by the broker. A recovery of commissions granted by decree of the lower court was reversed and the suit dismissed.

This opinion has referred to and quoted from Tennessee cases, exclusively; but the general rule as announced in American Jurisprudence is so completely "on all

fours'' with the facts of the instant case, with liability excluded in such case, that we quote same, as follows:

"If a broker, after introducing a prospective customer to his employer to no purpose, abandons his employment entirely, or if, after procuring a person who proves to be unwilling to accept the terms of his principal, he merely ceases to make further endeavors to negotiate a deal with that particular individual and all negotiations in that direction are completely broken off and terminated, he will not be entitled to a commission if his employer subsequently renews negotiations with the same persons, either directly or through the medium of another agent, and thus effects a sale without further effort of the broker first employed." 8 Am. Jur., Brokers, Sec. 144, p. 1069.

The application of the above rule to the facts of the instant case is doubly strong, because the resumption of negotiations in the instant case was not brought about by any effort on the part of Mr. or Mrs. Robinson, but was the result of an unexpected telephone call to them from Mr. Fondren, asking that negotiations be reopened.

Under all the facts and circumstances of this case, we think the judgment of the lower court was clearly erroneous. The cause is, accordingly, reversed and dismissed. The costs of both the Court of Appeals and the Circuit Court will be adjudged against the plaintiff, Kemmons Wilson Realty Company, and its surety on the cost bond.

Avery, P. J. (W. S.), and Carney, J., concur.