**Norman RATNER, d/b/a Ratner Media & Associates**

v.

**WILLIAM MORRIS AGENCY, INC.**

No. 3–97–0138.

United States District Court, M.D. Tennessee, Nashville Division.

Oct. 16, 1997.

Jordan S. Keller, Nashville, TN, for Plaintiff.

Jay Scott Bowen, Gregory S. Reynolds, Bowen, Riley, Warnock & Jacobson, PLC, Nashville, TN, for Defendant.

### MEMORANDUM

HIGGINS, District Judge.

The Court has before it the defendant's motion (filed August 8, 1997; Docket Entry No. 11) for summary judgment and its memorandum (Docket Entry No. 12) in support; the plaintiff's response (filed August 28, 1997; Docket Entry No. 18) and his memorandum (Docket Entry No. 19) in support; and the defendant's reply (filed September 11, 1997; Docket Entry No. 24) to the plaintiff's response.

The Court has subject matter jurisdiction over the plaintiff's claims pursuant to 28 U.S.C. § 1332.

For the reasons discussed below, the defendant's motion for summary judgment will be granted in part and denied in part.

### I.

The plaintiff is an agent and manager who represents race car driver Willie T. Ribbs. The defendant is a talent and booking agency that represents Bill Cosby and Andy Griffith. In August of 1995, the plaintiff introduced the defendant to Shoney's Restaurant for the purpose of negotiating a sponsorship/spokesperson deal involving Mr. Ribbs and Mr. Cosby. The plaintiff and the defendant did not enter into a written fee agreement. Mr. Cosby subsequently became disinterested in the deal, and thus, no contract involving him or Mr. Ribbs was ever consummated. The defendant, however, continued negotiations with Shoney's for another spokesperson. According to the defendant, Mr. Griffith was one of several individuals suggested by it as a spokesperson for Shoney's.

During this same time period, an advertising agency retained by Shoney's conducted a survey which found that Mr. Griffith would be a likely spokesperson. Shoney's ultimately hired Mr. Griffith as its spokesperson, and the defendant, as the agency representing Mr. Griffith, received a commission. The plaintiff did not receive any commission on this transaction.

The plaintiff filed this action on February 6, 1997, alleging three theories of recovery. First, the plaintiff alleges that he and the defendant had a verbal agreement that the plaintiff would receive part of the commission earned on the Andy Griffith/Shoney's spokesperson arrangement, an agreement which the plaintiff alleges the defendant breached. Second, the plaintiff alleges that he was the "procuring cause" of the agreement between Shoney's and Mr. Griffith and is, therefore, entitled to recover part of the commission. Third, the plaintiff alleges that, even if he was not the procuring cause of the agreement between Shoney's and Mr. Griffith, he is entitled to his fee based on an unjust enrichment theory.

## II.

As provided by Federal Rule of Civil Procedure 56(c), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202, 211 (1986). In its consideration of the evidence, the Court must view all facts and inferences to be drawn therefrom in the light most favorable to the non-moving party. *Davidson & Jones Dev. Co. v. Elmore Dev. Co.*, 921 F.2d 1343, 1349 (6th Cir.1991). In order to prevail on a summary judgment motion, the moving party bears the burden of proving the absence of a genuine issue of material fact concerning an essential element of the opposing party's action. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265, 274 (1986); *Davidson & Jones Dev. Co.*, 921 F.2d at 1349; *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir.1989). An issue of material fact is one which, under the substantive law governing the issue, might affect the outcome of the suit. *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510, 91 L.Ed.2d at 211.

In addition, a dispute about the material fact must be genuine, that is, "the evidence is such that a reasonable jury could return a verdict for the non-moving party."[1] *Id.* at 248, 106 S.Ct. at 2510, 91 L.Ed.2d at 211–12. Since the preponderance of the evidence standard is used in this determination, more than a mere scintilla of evidence in support of the plaintiff's position is required. *Id.* at 252, 106 S.Ct. at 2512, 91 L.Ed.2d at 214.

Once a motion for summary judgment has been made, "the nonmoving party bears the responsibility to demonstrate that summary judgment is inappropriate under Rule 56(e)." *Davidson & Jones Dev. Co.*, 921 F.2d at 1349. The non-moving party may not merely rest on conclusory allegations contained in the complaint, but must respond with affirmative evidence supporting its claims and establishing the existence of a genuine issue of material fact. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553, 91 L.Ed.2d at 274; *Cloverdale Equip. Co. v. Simon Aerials, Inc.*, 869 F.2d 934, 937 (6th Cir.1989). While the disputed issue does not have to be resolved conclusively in favor of the non-moving party to defeat summary judgment, "sufficient evidence supporting the claimed factual dispute" must be shown, thereby requiring resolution of the parties' differing versions of the truth by a jury or judge. *Liberty Lobby*, 477 U.S. at 249, 106 S.Ct. at 2510, 91 L.Ed.2d at 212; *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569, 592 (1968).

## III.

### A. Breach of Contract

Even though there was no written agreement between the plaintiff and the defendant, the plaintiff alleges there was a verbal agreement between the parties concerning any contract obtained for Shoney's with a spokesperson who was a WMA client. The plaintiff asserts that after the negotiations with Mr. Cosby were terminated, he asked Rick Hersh, William Morris Agency's senior vice-president, whether he would be compensated if another WMA client was chosen as Shoney's spokesperson. The plaintiff alleges that Mr. Hersh responded, "Absolutely." Appendix (filed August 8, 1997, Docket Entry No. 13) exhibit 2 at 112; *see also,* complaint (filed February 6, 1997; Docket Entry No. 1) ¶ 10. The plaintiff also states in his deposition that Mr. Hersh reaffirmed that he would be paid half of the fee earned as commission during a subsequent discussion at Mr. Hersh's office in Beverly Hills. Appendix (Docket Entry No. 13) exhibit 2 at 128.

The defendant "accepts as true Ratner's allegations regarding the existence and terms of the alleged 'verbal agreement.'" Defendant's reply (Docket Entry No. 24) at 5

---

**1.** The Supreme Court further explained that a court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251–52, 106 S.Ct. at 2512, 91 L.Ed.2d at 214.

n. 1. The defendant argues, however, that despite the existence of a verbal agreement, the plaintiff cannot recover unless he shows that he was the procuring cause of the agreement between Shoney's and Mr. Griffith. The plaintiff insists that "the facts surrounding the existence of a verbal agreement, the intent of the parties, and the terms under which the Plaintiff would be paid are disputed material questions that are properly left to a jury." Plaintiff's memorandum (Docket Entry No. 19) at 5.

The defendant cites the cases of *Pacesetter Properties, Inc. v. Hardaway*, 635 S.W.2d 382 (Tenn.Ct.App.1981) and *Robinson v. Kemmons Wilson Realty Co.*, 41 Tenn.App. 297, 293 S.W.2d 574 (1956) in support of its argument that an agent cannot recover a commission unless his efforts were the procuring cause of the transaction. In *Pacesetter*, the Court stated that an agent does not have a "perpetually vested interest" in any transaction that occurs between the customer and principal simply because the agent introduced the two parties. *Pacesetter*, 635 S.W.2d at 389–90. The Court held that "[t]he rights of the agent are limited to those transactions of which his efforts are found to be the efficient, procuring cause." *Id.*

In *Robinson*, the Court relied on the Tennessee Supreme Court case of *Marx & Bensdorf, Inc. v. Hall*, slip op. (Tenn. Jan. 15, 1938). In *Marx*, the Supreme Court considered a contract provision in which the owner agreed to pay the agent a commission " '[i]f the said property be sold or disposed of ... no matter by whom or in what manner.' " *Robinson*, 293 S.W.2d at 582 (quoting *Marx*).[2] The *Marx* Court held that:

> The provision in complainant's contract with Hall, relied on to support the claim for a commission for the sale ..., was designed to assure compensation for service rendered by the broker under the contract before its termination, a service which operated as the inducing or procuring cause of the sale. Such a provision in a contract employing a broker cannot be construed as definitely fixing liability for the commission without reference to

whether or not service was rendered and the service was the producing cause of the sale.

*Id.* at 583 (quoting *Marx*) (citation omitted). Although *Pacesetter*, *Robinson*, and *Marx* involve the sale of real estate and real estate broker's commissions, the Court finds these cases instructive in the instant case, especially in light of the fact that the plaintiff cites no cases to refute the defendant's reliance on these cases.

The plaintiff attempts to distinguish one case cited by the defendant, *Vanguard Telecommunications, Inc. v. Southern New England Telephone Co.*, 900 F.2d 645 (3d Cir.1990), by emphasizing that the express agreement in *Vanguard* provided for a commission only when the agent's actions were the procuring cause of the transaction. First, the Court disagrees with the plaintiff's interpretation of the agreement in *Vanguard*. The provision in *Vanguard* stated that the agent would be "compensated with a 2% commission on the amount of the sale price for LIGHTNET fibers or bandwidth **sold to any customer on their 'Account List' "** as long as the sale occurred within a specified time period. *Vanguard*, 900 F.2d at 648. (emphasis added). The agreement made no mention of "procuring cause," and the agent argued that the contract granted it a right to a commission regardless of whether it caused the sale. The *Vanguard* Court held that, under New Jersey law, there is a presumption that an agent is entitled to a commission only if the agent was the " 'efficient producing cause' " of the sale, and in the absence of language which "explicitly negatives the presumption," the presumption governs the agreement between the parties. *Id.* at 651–52. Thus, it was New Jersey law and not necessarily the agreement itself which allowed a commission only if the agent was the procuring cause of the transaction.

Second, regardless of the holding in *Vanguard*, the substantive issues in this case concerning breach of contract, "procuring cause," and unjust enrichment are governed by Tennessee law and not the law of New Jersey or any other state. The plaintiff has

---

**2.** Because the Court cannot locate a copy of the *Marx* slip opinion, which has been reproduced in

*Robinson*, the Court is unable to provide pinpoint cites.

not put forth any Tennessee law or cases which would refute the defendant's argument that the plaintiff must show that he was the procuring cause of the agreement between Shoney's and Mr. Griffith in order to recover a commission under the verbal agreement. Thus, the Court agrees with the defendant's argument that the plaintiff must make such a showing, regardless of whether a verbal agreement existed between the parties. Accordingly, insofar as the defendant contends that, under a breach of contract theory, the plaintiff must show that he was the procuring cause of the Shoney's/Griffith agreement, the defendant's motion for summary judgment shall be granted.

As discussed below, however, the Court finds that a genuine issue of material fact exists as to whether the plaintiff was, in fact, the procuring cause of the agreement between Shoney's and Mr. Griffith. Accordingly, the plaintiff's claim for recovery based on a breach of contract theory shall be submitted to a jury.

In addition, as for the defendant's argument that the verbal contract is unenforceable for lack of consideration, the Court finds that such an argument was not properly raised in the defendant's motion for summary judgment so that the plaintiff could respond.[3] Because the Court has found that a genuine issue of material fact exists as to the plaintiff's breach of contract claim, any argument about whether the verbal agreement is enforceable may be raised at trial.

### B. Procuring Cause

■ The defendant asserts that the plaintiff did not suggest Mr. Griffith as a spokesperson and did not participate in negotiations concerning Mr. Griffith. The defendant argues, therefore, that the plaintiff's mere role in introducing the defendant to Shoney's is insufficient to entitle the plaintiff to a com-

mission as a procuring cause of the deal between Shoney's and Mr. Griffith. The defendant also argues that because an independent advertising agency was retained by Shoney's before the plaintiff contacted Shoney's and because the advertising agency identified Mr. Griffith as a likely spokesperson, the plaintiff was not the procuring cause of the agreement between Shoney's and Mr. Griffith.

The plaintiff responds that he did more than simply introduce the parties and that his efforts were the procuring cause of the agreement between Shoney's and Mr. Griffith. He further states that it was his influence and not that of the independent advertising agency which spurred Shoney's to adopt a celebrity spokesperson in the first place.[4]

The Court in *Pacesetter* recognized that "a seller is liable to the agent who brings the parties together even though the sale is on terms different from those specified in the agent's authority. This rule applies where negotiations continue without interruption to an agreement." *Pacesetter*, 635 S.W.2d at 389. The Court explained, however, that an agent's rights were terminated when there was a "'break-off' of negotiations followed by a substantial delay and a new approach" without the agent's participation. *Id.* at 390.

Although the defendant argues that the plaintiff only put the defendant in contact with Shoney's and played no part in suggesting Mr. Griffith as a spokesperson or in negotiations concerning Mr. Griffith, the plaintiff contends that he continued to participate in the search to find a suitable spokesperson after Mr. Cosby's withdrawal. The plaintiff testified that both he and Mr. Hersh made a list of other possible spokespersons, including Florence Henderson, Reba McIntire, and Vince Gill. Furthermore, the plain-

---

**3.** The defendant raises this argument for the first time in its reply. The Court notes that the defendant has not followed the Court's order (entered April 9, 1997; Docket Entry No. 8) that "[n]o reply shall be filed to any response unless invited by the Court." *Id.* at n. 1.

**4.** The defendant argues in its reply brief that the plaintiff puts forth a new theory in his response that the defendant deprived him of his commis-

sion by taking the negotiations out of his hands and completing the sale itself. The Court does not find this to be a new theory but simply an argument supporting the plaintiff's original contention that, because he was the procuring cause of the transaction, the defendant was not entitled to exclude him from the transaction in an effort to deny him his commission.

tiff claims that Mr. Hersh agreed that he would be compensated if another WMA client was chosen by Shoney's. Appendix (Docket Entry No. 22) exhibit 5 at 112.

Mr. Hersh corroborated the plaintiff's testimony that he and the plaintiff discussed other possibilities for a spokesperson. Further, Mr. Hersh testified that in late August and September of 1995, while he was still working with the plaintiff on the Shoney's sponsorship deal, he assumed that the plaintiff would be compensated for his involvement. Mr. Hersh also informed the plaintiff that Shoney's was interested in Mr. Griffith. Appendix (filed under seal on August 28, 1997; Docket Entry No. 22) exhibit 1 at 24–32. While Mr. Hersh was on vacation, he placed Cary Berman in charge of the negotiations involving Shoney's. Mr. Berman testified that he had several conversations with the plaintiff during this time on behalf of Mr. Hersh in order to keep the plaintiff abreast of the situation with Shoney's. exhibit 4 at 7, 18–19.

In addition, Greg Kaplan, former vice-president of marketing for Shoney's, stated in his affidavit that "[i]f Norman Ratner had not made the initial call regarding Bill Cosby, it is very likely that Shoney's would not have gone with any celebrity spokesperson." Appendix (Docket Entry No. 22) exhibit 2 ¶ 9; and exhibit 3 ¶ 8.

The defendant argues that *Robinson* rejected using such a "but for" argument in its analysis of whether or not the plaintiff was the procuring cause. Although such a reading of *Robinson* may be accurate, the Court notes that, in determining whether the plaintiff was the procuring cause, the *Robinson* Court focused on whether the negotiations which followed the introduction were "broken off in good faith" and "whether or not the sale was the result of new and independent negotiations." *Robinson*, 293 S.W.2d at 577; *see also, supra*, at 10. The Court believes that attention to such factors is necessary in determining whether the plaintiff was the procuring cause of the agreement between Shoney's and Mr. Griffith.

Mr. Kaplan attested that because of the research conducted on Mr. Cosby, Shoney's realized the benefits of a celebrity endorsement, and therefore, the plaintiff continued to suggest other people even after Mr. Cosby rejected the deal. Appendix (Docket Entry No. 22) exhibit 2 ¶¶ 6, 8. It is clear from Mr. Hersh's cited testimony that neither the plaintiff nor the defendant "broke off" negotiations; rather, the plaintiff continued to discuss the deal with Mr. Kaplan. Thus, the Court finds that there is a genuine issue of material fact as to whether the plaintiff's participation was enough to establish that he was the procuring cause of the agreement between Shoney's and Mr. Griffith, even though that agreement constituted a transaction on terms different from those under the plaintiff's authority.

The defendant also argues that the plaintiff could not have been the procuring cause of the agreement because an independent advertising agency retained by Shoney's identified Mr. Griffith as a spokesperson. The defendant emphasizes that the ad agency was hired by Shoney's a month **before** the plaintiff first contacted Shoney's, and that according to Steve Wood, vice-president of the ad agency, the agency identified Mr. Griffith through its own research. Affidavit of Wood (filed August 8, 1997; Docket Entry No. 14) ¶¶ 2–6. Thus, the defendant argues that the plaintiff did not play a role in facilitating the agreement between Shoney's and Mr. Griffith.

However, Mr. Kaplan stated in his affidavit that "it was only after Norman Ratner had sold Shoney's, Inc. on the idea of a celebrity spokesperson, namely Bill Cosby, and we later found out that Bill Cosby would be unavailable, that I contacted [the agency] about helping Shoney's find a suitable replacement." Appendix (Docket Entry No. 22) exhibit 3 ¶ 3. In addition, Mr. Kaplan attested that the ad agency was not working on a celebrity spokesperson idea until Mr. Kaplan convinced them to do so after the plaintiff gave him the idea. Mr. Kaplan further stated that it was he who recommended Mr. Griffith to the agency, and when the agency contacted the defendant about using Mr. Griffith, Mr. Kaplan believed that the plaintiff and the defendant were "still working together on this deal." *Id.* ¶ 4–7.

The Court finds that a genuine issue of material fact exists as to whether the plaintiff was the procuring cause of the agreement between Shoney's and Mr. Griffith. Thus, the defendant's motion for summary judgment on this issue shall be denied.

### C. Quasi-Contract Theories

The plaintiff alleges that even if he was not the procuring cause of the agreement between Shoney's and Mr. Griffith, he can still recover under an unjust enrichment theory because he performed the duties he was hired to perform and because his services conferred a benefit on the defendant. The defendant cites *Pacesetter* in support of its argument that the plaintiff is still required to show that he was the procuring cause of the transaction even under a quasi-contract theory, such as quantum meruit or unjust enrichment.

In *Pacesetter*, the Court held that:

In view of the well known contingent character of broker's commissions, there is no basis for allowing a "quantum meruit" commission to a broker who has not produced the sale. To do so would be to recognize legal liability for a "finder's fee" or "introduction fee" independent of the facts required to establish a broker's commission.

*Pacesetter*, 635 S.W.2d at 391. The plaintiff concedes that the jury must find that he "produced the sale" in order to recover under a quasi-contract theory such as quantum meruit. The Court interprets the phrase "produced the sale" to be consistent with "procuring cause." Accordingly, the Court finds as a matter of law that the plaintiff must show that he was the procuring cause in order to recover under a quasi-contract theory. However, because the Court has found that a genuine issue of material fact exists as to whether the plaintiff was, in fact, the procuring cause of the agreement between Shoney's and Mr. Griffith, the plaintiff's claim for recovery under a quasi-contract theory shall be submitted to a jury.

### IV.

The Court shall grant summary judgment in favor of the defendant insofar as the plaintiff must show that he was the procuring cause of the Shoney's/Griffith agreement in order to recover under either a breach of contract theory or a quasicontract theory. In all other respects, the defendant's motion shall be denied and the breach of contract claim, the procuring cause claim, and the quasi-contract claim shall all be submitted to the jury.

An appropriate order will be entered.

### ORDER

In accordance with the memorandum contemporaneously entered, the defendant's motion (filed August 8, 1997; Docket Entry No. 11) for summary judgment is granted in part and denied in part.

Accordingly, the Court grants summary judgment in favor of the defendant insofar as the plaintiff must show that he was the procuring cause of the Shoney's/Griffith agreement in order to recover under either a breach of contract theory or a quasicontract theory. In all other respects, the defendant's motion is denied and the breach of contract claim, the procuring cause claim, and the quasi-contract claim shall all be submitted to the jury.

This case will proceed to trial before a jury on Tuesday, November 18, 1997, at 9:00 a.m.

It is so ORDERED.