## Becker v. Crabb.

(Decided March 13, 1928.)

### Appeal from Jefferson Circuit Court (Common Pleas Branch, Second Division).

1. Auctions and Auctioneers.—Auctioneer is agent of seller of property, and must act in good faith and in the interest of his principal; neither principal nor auctioneer being permitted to look exclusively to his own interest.

2. Auctions and Auctioneers.—Until bid is accepted at auction, seller may withdraw the property from sale or bidder withdraw his bid, even though conditions of sale provide that bids should not be withdrawn.

3. Auctions and Auctioneers.—Where property was selling unreasonably below its market value and at a ruinous sacrifice, seller had right to stop sale before the property was knocked down, though agreement with auctioneer provided that property should be sold, and that "the highest price obtainable on sale day is to be confirmed by the owner, regardless of what the price may be."

4. Auctions and Auctioneers.—Though owner of property agreed to confirm sale at highest price obtainable on sale day, regardless of what the price might be, owner was not liable to auctioneer for commissions, where she elected to stop sale on account of property selling unreasonably below its market value, and owner's liability to auctioneer under such circumstances was limited to reasonable expenses incurred by him and reasonable compensation for auctioneer's personal services rendered under the contract.

5. Auctions and Auctioneers.—Contract for sale of property at public auction, drawn by auctioneer, which required owner to accept highest price obtainable, will not be construed in auctioneer's favor beyond fair meaning of terms used so as to give him an unfair or unreasonable advantage.

BEN F. GARDNER for appellant.

MARK BEAUCHAMP for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON— Reversing.

Teresa Becker owned three tracts of land near Louisville, one containing 36 acres and two 45 acres each, on the Preston Street road about five miles from Louisville, and about half a mile off the road. On May 2, 1925, she entered into a written contract with Edward L. Crabb, by which he undertook to have the land subdivided into lots and sell it at auction; he to pay all the ex-

penses of subdividing, advertising, and selling the land, and to have as a commission 10 per cent. on houses and 25 per cent. on the lots. He went on under the contract, had the streets laid out, and had the land cut up into lots, and advertised a sale at auction. When the day of sale came, it was raining, and there were so few there that no sale was made. He readvertised the sale for two weeks later, and then attempted to sell the land at auction. On September 23, 1925, he brought this suit against her, charging, in substance, that the defendant would not make a deed to any of the lots or property sold, and instructed all those present not to bid upon the property; that but for this wrongful conduct upon the part of her and her attorney he could have sold the property for $60,000, and his commissions under the contract would have amounted to $12,000, for which he prayed judgment. An answer was filed controverting the allegations of the petition. On the trial of the case the plaintiff recovered judgment for $3,000. The defendant appeals.

While there is some conflict in the evidence, the proof for the defendant, which is sustained by the weight of the evidence, shows in brief these facts: The crowd that came to the sale on the second day was largely made up of persons who were not bidders, but only there for curiosity. There were very few real bidders present. Miss Becker had built five bungalows, at a cost of $2,500 each. These houses were just finished, and one of these houses with the lot it stood on was first put up for sale. It was bid up to about $900. There the bidding stopped. Miss Becker's sister, to prevent a sacrifice of the property, then bid $3,000, and the property was knocked off to her. Crabb then proceeded to sell another bungalow. When he got up to about $900, the bidding stopped again. Miss Becker's attorney then gave public notice that she would not make a deed for any of her property at such a ruinous sacrifice, and requested Crabb to stop the auction. He refused to do so, and pulled his contract out of his pocket and read it to the crowd. It contained this provision:

"Sixth. It is understood and agreed by all parties hereto that the within described property is to be sold at public auction as herein provided and that the highest price obtainable on sale day is to be confirmed by the owner, regardless of what that price may be."

He then went on with the auction, and, as each piece of property was about to be knocked off, the attorney would repeat what he had said before, but Crabb insisted on going on, the lots selling even at a greater sacrifice than the improved property. No deeds were made pursuant to the sale; nobody demanded a deed. The circuit court instructed the jury to find for Crabb his contract compensation, or what he would have earned, provided the sale had been allowed to take place unobstructed and unprevented by the acts of the defendant. The court refused to give any instruction for the defendant authorizing a verdict for her, if the jury believed the testimony on her behalf.

The contract between the parties was for their mutual benefit. Crabb got certain commissions from the sale. The rest of the proceeds went to Miss Becker. If it was sold at a ruinous sacrifice, the ruinous loss fell on her. Crabb was her agent. "A broker must act in good faith and in the interest of his principal." 9 C. J. 536. This rule applies no less to real estate brokers than to other brokers. The same rule applies to all auctioneers. "An auctioneer, in making a sale, whether of personalty or realty, is by virtue of his employment to make the sale primarily as the agent of the seller." 6 C. J. 824. As to when a sale is made the rule is well settled as follows:

> "Until the hammer falls and the bid is accepted a locus penitentiae remains, and the seller may withdraw his property from sale, or the bidder may withdraw his bid, even though the conditions of sale provide that bids shall not be withdrawn. But the withdrawal of a bid, in order to be effective, must be open and loud enough to be heard by the auctioneer."

While the contract provided that Miss Becker would confirm the sale at the highest price obtainable, it did not take from her the right to stop the sale before the property was knocked down, and where the property was selling at a ruinous sacrifice. In fact, she did stop the sale.

The purpose of the contract was to sell the land for the mutual benefit of the parties. Neither had the right to look alone to his own interest. When it became apparent that to continue the sale was to inflict an unreasonable loss on the owner of the property, and the owner for this reason stopped the sale, she became liable to the

broker for his reasonable expenses incurred and a reasonable compensation for his personal services under the contract. The contract did not contemplate the sale of the property at prices that were ruinous to the owner. When it became apparent that the property could only be sold at an unreasonable sacrifice, the owner had a right to stop the sale, for it thus became apparent that the contract was incapable of reasonable execution, and the broker, if she was warranted in so concluding, cannot complain that she exercised her option, when she pays his expenses and pays him a fair compensation for his personal services, for the contract cannot mean that she was to lose all she had at his option. The contract simply in substance provided for an auction sale of the land. This sale is governed by the same rules as other auction sales. The owner had the right to stop it at her election. But she could not thus escape her liability to the broker under the contract, unless the property was selling unreasonably below its fair market value, or the circumstances were such as to show it could only be so sold at the auction. The court should have instructed the jury as above indicated.

In 13 C. J. p. 540, sec. 19, the rule is thus stated.

"The words of a contract will be given a reasonable construction, where that is possible, rather than an unreasonable one, and the court will likewise endeavor to give a construction most equitable to the parties, and which will not give one of them an unfair or unreasonable advantage over the other."

The contract was drawn by appellee, and will not be construed in his favor beyond the fair meaning of the terms used. Thus construed, it was simply an agreement to sell the property at auction. He obtained the contract by representing to her that he could thus sell the property at a good price. Appellant was not required to stand by at the sale and permit her property to be sold at an unreasonable sacrifice. To so construe the contract would be to give appellee an unfair and unreasonable advantage over her.

Judgment reversed, and cause remanded for a new trial.