Hood *et al. v.* Gillespie.

(*Jackson,* April Term, 1950.)

Opinion filed May 1, 1950.

Burch, Porter & Johnson, of Memphis, for plaintiffs in error.

Lowell W. Taylor and Lake Hays, both of Memphis, for defendant in error.

Mʀ. Cʜɪᴇꜰ Jᴜsᴛɪᴄᴇ Nᴇɪʟ delivered the opinion of the Court.

The plaintiffs brought suit in the circuit court of Shelby County against the defendant to recover $10,000.00 as commissions earned as sole agents of the defendant for the sale of property belonging to the defendant, and in the alternative for the recovery of damages, upon a *quantum meruit* basis, for breach of contract in withdrawing the listed property from the market, the gravamen of the charge being that the defendant's act in so withdrawing the property was an act of bad faith and at a time when plaintiffs had produced a purchaser who was ready, willing and able to buy on terms acceptable to the owner. The plaintiffs, Herbert Hood, Sr., and Jr., are duly qualified real estate brokers in Memphis and Shelby County. Herbert Hood, Sr., contacted the defendant, Gillespie, with the view of obtaining the agency for the sale of Mr. Gillespie's farm, referred to in the record as "Trafalgar Farm". The property was worth approximately $275,000.00, consist-

ing of large acreage, valuable live stock and other personalty.

Pursuant to oral conversations between the parties the defendant wrote the plaintiffs the following letter on July 24, 1946:

"Mr. Herbert Hood, Realtor,

Dermon Building,

Memphis, Tenn.

Dear Sir:

As per our conversation of several days ago, I herewith give you the information that you asked for:

Acres on the Farm in neighbor of 850.

Fences: wire and panel—26½ miles.

Taxes: $720 annually.

Insurance: $51,000.00.

All buildings and fences are in perfect condition.

I am placing this in your hands for exclusive sale with the following exceptions:

That you have exclusive right of sale to January 1, 1947.

Exception to above—if a purchaser that has had no contact with you comes to me and I make the sale myself, then there will be no commission due you. I feel this is fair both to you and myself.

With kindest regards, I am

Yours very truly,

(s)  H. C. Gillespie

H. C. Gillespie."

It is conceded that no prospective purchaser was procured during the year 1946. The listing expired on January 1, 1947. Thereupon Mr. Hood, Sr., requested an extension of the sole agency listing, which was

granted as appears from the following letter, which was dated January 24, 1947:

"Mr. Herbert Hood,

c/o Herbert Hood Realty Co.,

Dermon Bldg.

Memphis, Tenn.

Dear Mr. Hood:

In reference to our conversation of last Saturday, January 18th, this is to advise that it is perfectly agreeable to me for you to act as *Sole Agent* for the sale of Trafalgar Farm. We will not set any definite date except that I can terminate same on 3-months' notice to you.

Thanking you for your interest in this matter, I am

Yours very truly,

(s) H. C. Gillespie

H. C. Gillespie."

In neither of these two letters did the owner name any price for the property, or terms upon which he was willing to sell. The property was very valuable and the number of persons who might be interested in acquiring it was limited. The plaintiffs advertised it extensively and spent considerable sums of money in bringing it to the attention of prospects. The defendant was well aware of their efforts in this regard. We think it will be admitted by all parties in interest that the real estate agent or broker takes the risk of losing all monies thus expended where he failed to procure a purchaser who is ready, willing and able to buy upon terms which are acceptable to the seller. We do not understand that the plaintiffs' counsel make a contrary insistence.

The plaintiffs were able to procure but one prospective purchaser, viz., Dr. W. T. Satterfield.

The issues were tried to a jury and the trial judge, at the conclusion of the plaintiffs' proof, directed a verdict in favor of the defendant. It appears without serious dispute that on July 18, 1947, the plaintiffs obtained a written offer from Dr. Satterfield, accompanied by a check for $5,000.00 as earnest money, agreeing to buy the farm and numerous items of personal property for $180,000.00 to be represented by $20,000.00 in cash, $40,000.00 in property owned by him and to be exchanged, the balance to be in mortgage notes. This was on Friday, July 18th. On the same day the defendant, after visiting Dr. Satterfield's property, struck out "$20,000.00 cash" and inserted "$40,000.00 cash", making a total of $200,000.00 for the property instead of the $180,000.00 offered by Dr. Satterfield. The agreement, with the above mentioned changes made, was "initialed" by the defendant and delivered to the plaintiffs. It was delivered to Dr. Satterfield. It is important to note that the original offer and counter offer contain the following: *"This offer good until noon July 19, 1947."*

The plaintiff took the counter offer to Dr. Satterfield late in the afternoon of July 18th. It appears that, while he initialed one of the copies he kept all of them in his possession. He asked Hood to contact Gillespie and make an appointment to see him on Sunday, July 20th. Mr. Hood reached the defendant sometime between 3:00 and 4:00 o'clock Saturday afternoon and told him "he thought the sale was made". On Sunday afternoon, July 20th, the parties met at the Trafalgar Farm. At this meeting Dr. Satterfield did not advise the defendant that his counter offer had been, or was at that time, accepted. There was no written memorandum of acceptance produced signed by him and dated prior to noon July 19th, 1947.

.The occasion of this meeting and what occurred is best described by Mr. Hood, as follows:

"Q. When you arrived at the Trafalgar Farm, what if anything occurred? A. Mr. Gillespie met us in the car and stated that he had bad news. He said that they had been up all night and that his wife and son didn't want him to sell the place and gave us a number of' reasons. One of them was that the boy wanted to keep it and give it to the grandchildren. We talked a little; Dr. Satterfield listened. He talks very little. Before I left, I said, 'Henry, is that final?' And he said, 'Yes.' "

Upon the foregoing undisputed testimony the trial judge was of opinion that there was no binding contract of sale executed and delivered by noon on Saturday, July 19th, and plaintiffs had presented no evidence that a purchaser had been procured ready, willing and able to buy at a price and upon terms acceptable to the owner, and hence no right to recover upon a *quantum meruit* basis. He accordingly directed a verdict for the defendant.

The plaintiffs appealed to the Western Division of the Court of' Appeals, who, after considering and overruling all assignments of error, affirmed the trial court. Thereupon a petition to rehear was filed with the court, contention being made that the opinion was in conflict with *Hutchinson* v. *Dobson-Bainbridge Realty Co.* (at that time unreported, but later reported in Tenn. App., 217 S. W. (2d) 6) and also *Lazarov* v. *Nunnally*, Tenn. Sup., 217 S. W. (2d) 11. The petition to rehear was granted and the case was heard by the Court of Appeals sitting *en banc*. The holding of the Western Division of the Court of Appeals, as well as the trial court, was reversed upon the authority of the two cases above

cited. JUDGE SWEPSTON dissented. We granted *certiorari* because of the conflicting opinions. The important questions have been elaborately argued and briefed by counsel for the respective parties. It is not at all necessary that we set out in detail the several assignments of error directed to the holding of the Court of Appeals. The case narrows itself down to the contention of the plaintiffs, Hood, (1) that he had an exclusive agency for the sale of the property in question, which could not be revoked by the defendant except upon 90 days notice, and having procured a purchaser who was ready, willing and able to buy the property upon terms acceptable to the owner, he was entitled to the amount of the commissions sued for; (2) "that the principal cannot defeat the brokers right to compensation by revoking his authority in the midst of negotiations, at least where there is a strong likelihood of the negotiations being successful."

The learned Court of Appeals was definitely of opinion (SWEPSTON, J., dissenting) that the holding of the Middle Section of the Court in *Hutchinson* v. *Dobson-Bainbridge Realty Co.* and of this Court in *Lazarov* v. *Nunnally, supra,* controlled the case at bar, and that there was some evidence to support the foregoing contentions. Conceding that this is a unilateral contract and that the rule announced in the above cases is correct, yet the broker is not entitled to compensation on the theory of part performance of the contract until he has procured a buyer who is ready, willing and able to comply with the seller's terms during the term of the exclusive agency.

In the two cases relied on there was a definite agreement as to the terms of sale of the property, the broker having the sole agency for a specified time. In

the Hutchinson case the owner bargained with the agent that the latter should be paid his commission regardless of who sold the property within the 90 days limit, whether it be "by owner, agent, *or any other party.*" [217 S. W. (2d) 9] Hutchinson sold the property through another agent within the time limit of the contract. In the Lazarov case there was an agreement as to the price, the agent being given 60 days within which to sell the steel tubing. His compensation was the excess above five cents per foot. Before the expiration of the 60 day period the owner sold the property. It thus appears that in both of these cases there was not only an express agreement as to price and terms of sale, but the owners bound themselves by contract not to revoke the agency agreement, and there was in each case a sale of the property. We are in full accord with the holding in the Hutchinson case that "the right to [revoke] depends on whether he has bound himself by contract not to do so for a stated time." [217 S. W. (2d) 9] In holding that part performance of an unilateral contract by the offeree furnishes sufficient consideration, and is not revokable during the time of the agency it is said by Felts J. in the Hutchinson case:

"This rule avoids hardship to the offeree, and yet does not hold the offeror beyond the terms of his promise. It is true by such terms he was to be bound only if the requested act was done; but this implies that he will let it be done, that he will keep his offer open until the offeree who has begun can finish doing it. At least this is so where the doing of it will necessarily require time and expense. In such a case it is but just to hold that the offeree's part performance furnishes the 'acceptance' and the 'consideration' for a binding subsidiary promise

not to revoke the offer, or turns the offer into a presently binding contract conditional upon the offeree's full performance.''

In the case at bar there was never any understanding as to the price or terms of sale of the Trafalgar Farm, except a counter offer by Mr. Gillespie to take $200,000.00, upon certain specified terms, provided the offer was accepted by Dr. Satterfield on or before noon, July 19th, 1947. Since the offer was not accepted at the time specified all negotiations between the parties came to an end. Mr. Hood had not procured a buyer who had agreed to the price and terms of the owner. Had Dr. Satterfield accepted the counter offer of Mr. Gillespie and the latter refused to abide by the terms of it, there could be no doubt of Mr. Hood's right to his commission. Furthermore had Gillespie sold the property himself, or through another agent, as was done in the Hutchinson and Lazarov cases, it is certain that Gillespie would have thus made himself liable for the agent's commission.

It is insisted by the plaintiff that the defendant's refusal to abide by his counter offer to accept $200,000.00 for the property, although it was not accepted, and later withdrawing it from the market, was a breach of contract and entitled him to recover the customary real estate commission. To this we cannot agree. He had valued the property at $250,000.00 and had never agreed to accept less for it, except the counter offer. The plaintiff had had the exclusive agency for more than a year and during that time had been able to procure but the one buyer, Dr. Satterfield, whose offer did not even approximate the owner's valuation of the property. Following the failure of negotiations with him the withdrawal of it from sale was by no stretch of the imagina-

tion an act of bad faith. He had given Mr. Hood every opportunity to sell it and his reason for withdrawing it, i. e. to keep it for his son, was not a breach of faith.

Conceding that the withdrawal of the property from the market amounted to a sale by the owner, or he had done so to "keep it for his son", was not a violation of the sole agency agreement. There is no provision in said agreement whereby the owner had bound himself not to take the property off of the market, or not to sell it himself. The question was definitely settled in *Mc-Fadden* v. *Crisler,* 141 Tenn. 531, 536, 213 S. W. 912, 913, wherein CHIEF JUSTICE LANSDEN used the following language:

"Authority to sell land at a price fixed by the owner means a sale for cash, unless the contrary is stated. This must be so necessarily because the owner, having placed a value in dollars upon his land, is entitled to receive the amount at which he fixes the value of the land. 31 Cyc., 1215.

"Nor would the fact that Johnson had the sole agency for the sale of the farm prevent the owners from selling themselves. There was no stipulation in the contract of agency to this effect, and it is never presumed that the owner of property has deprived himself of the right to sell it. Mechem on Agency, Section 2445."

If the owner has not by his exclusive agency agreement "deprived himself of the right to sell it" we think the same rule would protect him in his right to withdraw it from the market, i. e., not to sell it at all unless it should appear by clear and cogent evidence that he did so for the sole purpose of defeating the agent of his commission.

The opinion of this Court in *McFadden* v. *Crisler*, to which we have made reference, finds support, not only in the authorities there cited, but in 12 C. J. S., Brokers, Section 94, pages 219, 220 as follows:

". . . but the giving to a broker of an exclusive agency merely, as distinguished from an exclusive right to sell, only precludes the principal from employing another broker and does not preclude him from making a sale himself in good faith to a purchaser not procured by the broker, without becoming liable to the broker for a commission, unless there is a special contractual provision giving a right to a commission on a sale by the owner."

It is true that the sale by the owner, or withdrawal from the market, works a hardship upon the agent who has gone to considerable expense in promoting a sale of the property. But the agent spends that money and devotes his efforts in the hope of making a sale, and thus earning the commission. It is a chance of losing which all real estate brokers take in undertakings of this kind unless their agency contract protects them. Restatement of the Law of Agency, par. 443; 2 Mechem, The Law of Agency (2d Ed.), par. 2427, 2434 (Note 53) and 2461; *Sibbald* v. *Bethlehem Iron Co.*, 83 N. Y. 378, 38 Am. Rep. 441. Mr. Hood was an experienced real estate broker and knew better than anyone the importance of protecting himself against such a possible loss. He failed to do it and the Courts are powerless to do it for him. We cannot save the situation for Mr. Hood by imputing to Mr. Gillespie as an act of bad faith his withdrawal of the property from the market. Under the authorities cited in this opinion he had the right to do so. It is wholly immaterial that he did so without giving

90 days notice of his intention. Since Gillespie had decided not to sell the property, his failure to give such notice could not affect the rights of the agent in any way whatever.

We have given full consideration to every phase of this controversy which has not been without its serious difficulties. Our final conclusion is that the Western Division was correct in affirming the trial judge in directing a verdict for the defendant, and an order will be entered accordingly.

GAILOR, TOMLINSON, and BURNETT, JJ., concur.

PREWITT, J., not participating.