# GUDIM REALTY, INC. v. LUCY HUGHES AND OTHERS.

169 N. W. (2d) 216.

June 20, 1969—No. 41480.

*Shanedling, Phillips, Gross & Aaron* and *Bert M. Gross,* for appellant.

*Pfau, Pfau & Lamm, Dailey & Kunard,* and *Marlin R. Kunard,* for respondent Hughes.

*Markert, Markert & Markert* and *John F. Markert,* for other respondents.

Heard before Knutson, C. J., and Nelson, Otis, Rogosheske, and Peterson, JJ.

ROGOSHESKE, JUSTICE.

Plaintiff, Gudim Realty, Inc., a licensed real estate broker, appeals from a judgment denying recovery of a broker's commission upon the sale of a motel and damages for an alleged intentional interference with plaintiff's rights under an exclusive sales contract.

On September 22, 1964, defendant Lucy Hughes signed an exclusive listing agreement with defendant The Igo Company, a licensed real estate broker, covering a motel which she owned in Little Falls. This agreement was for an initial term of 6 months and extended thereafter until canceled by Mrs. Hughes. It authorized the Igo Company to sell the motel for $115,000 and required Mrs. Hughes to pay a commission of a percentage of the sale price to that broker upon "any sale or contract for the sale or exchange" of the motel during the term of the agreement. This agreement was canceled by Mrs. Hughes during March 1965, effective April 15. On April 7, Mrs. Hughes signed an "Exclusive Sales Contract" with plaintiff giving it "the exclusive right to sell" the motel for $119,000 with an $18,000 cash down payment. This agreement provided that Mrs. Hughes would pay "a commission of ten percent of the purchase price * * * on *any sale* within six months" from the date of the agreement. (Italics supplied.) Since Igo Company's listing did not expire until April 14, plaintiff wrote, "This agreement to be null & void if sold by Igo by 4/15/65" upon a printed copy of the exclusive sales contract.

In March 1965, Elmer A. Lundgren became interested in buying the motel. Accompanied by defendant Willard Igo, he visited the motel in early April. On May 3, he returned with Igo and told Mrs. Hughes that he wanted to buy the motel. She informed him that she could not then sell the motel because of her exclusive listing agreement with plaintiff. Igo suggested that Mrs. Hughes might offer plaintiff "something or a little something" to release her from this agreement, and it is undisputed that she did

offer plaintiff $1,000 to rescind the agreement, but plaintiff refused.

Mrs. Hughes then sought legal advice. Based on an attorney's recommendation, she and Lundgren signed a document labeled "Purchase Agreement" whereby Lundgren agreed to lease the motel until after plaintiff's exclusive listing agreement expired and, if plaintiff had not sold the motel by then, to purchase it from Mrs. Hughes for $108,000 on a contract for deed. For arranging this agreement, Igo received a commission in the form of a deed to a house owned by Lundgren, from the sale of which he subsequently realized $6,300. On May 24, Mrs. Hughes and Lundgren entered a formal 5-month lease of the motel incorporating the terms of their previous "Purchase Agreement." Lundgren occupied the motel and took over management of it on June 1. At some point thereafter, plaintiff became aware of the lease and in September, following a meeting with Lundgren, was informed of all of the provisions of the transaction. Up until that time, plaintiff had continued to advertise the motel and to send prospects to examine it. However, when plaintiff discovered both the "Purchase Agreement" and the lease, it discontinued its efforts to sell the motel. On October 15, Lundgren completed his purchase of the motel from Mrs. Hughes. Plaintiff then brought this action against Mrs. Hughes to recover the commission specified in the exclusive sales contract, alleging that the agreement with Lundgren amounted to a "sale" during its term, and against Willard Igo and Igo Company for damages resulting from an alleged intentional interference with plaintiff's contractual rights. Igo and Igo Company then filed a counterclaim alleging that plaintiff fraudulently induced Mrs. Hughes to enter into the sales agreement while her exclusive listing agreement with Igo Company was still in force, thereby depriving them of the full sales commission they would otherwise have received on the sale to Lundgren.

In essence, the trial court found that plaintiff's listing contract was exclusive but that (1) the purchase agreement between

Mrs. Hughes and Lundgren did not amount to a sale within the meaning of plaintiff's exclusive sales contract; (2) Igo had not intentionally interfered with plaintiff's contractual rights; and (3) there had been no fraud on the part of plaintiff in inducing Mrs. Hughes to enter into the exclusive sales contract. Pursuant to these findings, judgment was entered in favor of defendants on plaintiff's two causes of action and in favor of plaintiff on the Igo counterclaim. Plaintiff appeals, contending that the first two of the above findings were in error.

Both parties concede that the April 7 agreement between plaintiff and Mrs. Hughes was in fact an exclusive sales contract. It follows under established law that plaintiff was entitled to a commission on any "sale" made during the term of that agreement, no matter by whom arranged, absent any material breach or failure of consideration on plaintiff's part and absent any mutual agreement by the parties to abrogate the contract. Confer Brothers, Inc. v. Colbrath, 149 Minn. 259, 183 N. W. 524.

The primary issue to be determined, then, is whether the evidence compels a conclusion that the purchase agreement was in fact a "sale," for if such a conclusion is required, plaintiff is entitled to the commission specified.[1]

The word "sale" as ordinarily used means an entire and absolute transfer of the thing sold without reservation. However, it is not always used in this sense. In determining whether the "Purchase Agreement" between Mrs. Hughes and Lundgren in fact amounted to a sale, neither the name which the parties gave it, its form, nor any of its provisions, taken alone, is controlling. Rather, it is the intent of the parties and the legal effect of the instrument which determine its nature. Morrison v. St. Paul N.

---

[1] Plaintiff cites Dobbs v. Conyers, 36 Ga. App. 511, 137 S. E. 298, as controlling on this issue. However, all the court in that case held was that under the specific circumstances and the language of the agreement there involved the trial court had erred in directing a verdict for the defendant, since there was an issue of fact as to whether a sale had actually taken place during the term of the exclusive sales agreement.

P. Ry. Co. 63 Minn. 75, 65 N. W. 141, 30 L. R. A. 546. It is clear that no absolute transfer of the motel was intended or in fact took place until after plaintiff's exclusive sales contract expired, and that Lundgren would not have become the owner of the motel if plaintiff had arranged a sale of it before that time. Actually, what the "Purchase Agreement" amounted to was not a sale but a conditional agreement to sell.

It is true, as plaintiff argues, that execution of a binding agreement to sell, conditioned upon performance of conditions by the parties thereto, has been held to be sufficient to entitle a broker to a commission under an exclusive sales contract. See, Francis v. Baker, 45 Minn. 83, 47 N. W. 452. However, in this case, neither of the parties to the agreement to sell had any control over the occurrence of the condition precedent since the agreement expressly conditoned the seller's duty to perform solely upon a failure by plaintiff to arrange a sale of the motel during the term of his exclusive sales contract. Mrs. Hughes had wanted to sell the motel for several years, but had little success in finding a serious buyer until Lundgren appeared. She did not care who bought her motel so long as she was assured of selling it. It is quite understandable that she was anxious to enter a conditional agreement to sell to Lundgren and was willing to pay Igo a commission on the transaction to avoid the risk of losing Lundgren, even though at the same time she exposed herself to the risk of paying another commission to plaintiff if he produced a buyer prior to October 7. Viewed most favorably to sustain the findings, the evidence shows that she entered this agreement in good faith in order to be sure that she would sell her motel to someone within 6 months. It persuasively appears that both Mrs. Hughes and Lundgren intended that the agreement would fully protect plaintiff's rights to sell the motel and thereby earn a commission. Both the "Purchase Agreement" and the lease which followed contained provisions expressly nullifying the agreement to sell to Lundgren if plaintiff procured a buyer ready, willing, and able to buy on the terms specified in the exclusive sales con-

tract. Mrs. Hughes, of course, would have had to accept any buyer produced by plaintiff who was ready, willing, and able to buy on the terms offered to Lundgren or any other terms more favorable to her. Any refusal on her part to then consummate the sale would have been a breach of the exclusive sales contract entitling plaintiff to damages, presumably equivalent to the commission reserved. Plaintiff, however, did not produce a buyer, even though nothing in the "Purchase Agreement" or the conduct of the parties prevented him from doing so.

Approaching the issue from the viewpoint of whether there was a "sale" within the contemplation of plaintiff and Mrs. Hughes, it must be recognized that a "commission on any sale" listing agreement serves a valid purpose mutually beneficial to both the seller and the broker. It induces the broker to make an all-out effort by advertising and every other promotional means available to stimulate the interest of prospective buyers and to effect a sale within the period of the listing by insuring that such efforts will not be uncompensated even though the owner or someone else is the procuring cause of the sale, which in the case of a nonexclusive listing would defeat the broker's right to a commission. The "Purchase Agreement" between Mrs. Hughes and Lundgren did not stop plaintiff from selling the motel and earning its commission. Its only practical effect was the elimination of at most one purchaser (Lundgren), who at the time was unknown to plaintiff and had not even seen its advertising, from all potential purchasers with whom plaintiff could have arranged a sale. Theoretically, plaintiff could have arranged a sale to Lundgren, had the latter been willing to risk a lawsuit by Mrs. Hughes and deal with plaintiff in order to make certain his purchase of the motel. Since plaintiff's right to sell the motel to any prospective purchaser was fully protected during the term of the exclusive sales contract, no "sale" within the contemplation of the parties to that contract occurred.

As noted by the trial court, plaintiff could have protected its rights by clearly providing that a commission be paid if Mrs.

Hughes made any "deal" whatsoever with respect to the motel during the term of the exclusive sales contract or by expressly requiring her to refer all prospective purchasers to him. See, Donlon v. Babin (La. App.) 44 So. (2d) 134.

Based upon the ordinary meaning of the word "sale," the intention of the parties to the "Purchase Agreement" and its legal effect, and the intention of the parties to the exclusive sales contract, the trial court did not err in concluding that there had been no sale of the motel during the term of plaintiff's exclusive listing contract and that plaintiff is not entitled to a broker's commission.

We are also of the opinion that the evidence sustains the trial court's conclusion that defendants Igo and Igo Company did not tortiously interfere with plaintiff's exclusive contractual right to sell the motel. The Spring Co. v. Holle, 248 Minn. 51, 78 N. W. (2d) 315, cited by plaintiff as controlling on this issue, is distinguishable, since in that case the eventual purchaser was a customer initially procured through the efforts of the plaintiff-broker, and the decision rested entirely upon a finding that the plaintiff was the procuring cause of the sale. The "Purchase Agreement" in this case did not result from any activity by the plaintiff and expressly preserved plaintiff's right to sell the motel. Except for a failure to disclose the existence and nature of the "Purchase Agreement" to plaintiff immediately, fully, fairly, and candidly, there is no evidence that either Mrs. Hughes or Lundgren in any manner interfered with plaintiff's efforts to sell the motel or to show it to prospective buyers. On the contrary, the evidence shows that plaintiff was encouraged to show the motel and that defendants and Lundgren knew and intended that the "Purchase Agreement" would be a nullity if plaintiff produced a buyer ready, willing, and able to purchase the motel on the terms specified in the exclusive sales contract or on any other terms acceptable to Mrs. Hughes. Upon this record, we find no basis for holding that the evidence compels a conclusion that

there was an intentional interference with plaintiff's contractual rights.

Affirmed.