Bettye PARKER, d/b/a Bettye Parker
Realty Company, Complainant-
Appellant,

v.

M. L. COMPTON et al., Defendants-
Appellees.

Court of Appeals of Tennessee,
Western Section.

Jan. 2, 1973.

Certiorari Denied by Supreme Court
April 16, 1973.

Atchley, Atchley & Cox, Chattanooga,
for complainant-appellant.

T. Maxfield Bahner, Chambliss, Bahner
& Crawford, W. Ferber Tracy, Spears,
Moore, Rebman & Williams, Chattanooga,
for defendants-appellees.

CARNEY, Presiding Judge.

The complainant below, Bettye Parker,
d/b/a Bettye Parker Realty Company, has
appealed from a decree of the Chancery
Court dismissing her suit against M. L.
Compton and wife, Patricia Compton, to
recover a commission of $1,620.00 for the
sale of the Comptons' home in Chattanoo-
ga, Tennessee. Complainant also sought
treble damages under the authority of T.
C.A. Section 47–15–113 against the de-
fendant, Ronald G. Rogers. She averred
that Mr. Rogers, the purchaser of the
home, had procured M. L. Compton and
wife to breach the written contract with
Bettye Parker giving complainant the ex-
clusive right to sell the home. The Chan-
cellor dismissed complainant's suit against
defendant Rogers as well as the Comptons.

Mr. Compton was being transferred by
his company and first tried to sell his home
without the services of a realtor. He ad-
vertised the same in the Chattanooga pa-
pers. Defendant Ronald G. Rogers con-
tracted to buy the home from Mr. and
Mrs. Compton at a price of $28,019.55 of
which amount he was to pay $6,400.00 in
cash and Rogers was to assume a mortgage
for the balance. The Title Guaranty &
Loan Corporation of Chattanooga prepared
the closing papers but Mr. Rogers was un-
able to raise the $6,400.00 down payment

on the designated date for closing. He was released of his contract by Mr. Compton.

Shortly thereafter in May, 1970, Mr. and Mrs. Compton listed their home for sale with the complainant, Bettye Parker, at her solicitation. On June 24, 1970, a new contract was entered into between Mr. and Mrs. Compton and Bettye Parker which is the basis of the complainant's suit in the present cause. The pertinent parts of said contract are copied herein:

### "UNIFORM SALES AGENCY CONTRACT

AGENT'S COPY

To   Bettye Parker Realty Company                          Date   June 24, 1970
         Members, Multiple Listing Service, Chattanooga Board of Realtors, Inc.

In consideration of your agreement to list the property for sale with the Multiple Listing Service, Chattanooga Board of Realtors, Inc., and to use your best efforts to find a purchaser, I hereby grant you the sole and exclusive right to sell my property located at
   9230 Ramblewood Drive
in accordance with legal description below which is a part of this contract. This agency is given for three (3) months from date. In event property is sold within a period of sixty days thereafter to any person who has been introduced to the property during said 3 months period, the owner agrees to pay commission in accordance with the terms of the Multiple Listing Contract. The price to be
   $30,000.00      Dollars upon terms as follows:
   Equity or Conventional

I agree that if this property is sold by myself or anyone else during the above stated period of time, I will pay Bettye Parker Realty Company a cash commission at the time of closing from the proceeds of the sale. The commission to be charged will be in accordance with the schedule of commissions approved by the Chattanooga Board of Realtors, Inc.

I (we) will furnish Title Insurance Policy, papers, revenue stamps and convey by regular form Warranty Deed. Taxes, insurance and rent shall be prorated from date of conveyance. To the best of my belief, the title is good and merchantable.

I agree to give possession on or before _____ from date of   Closing  .

You are hereby authorized to place a 'FOR SALE' sign on the property, to remove all other signs.

Member, Multiple Listing Service
Chattanooga Board of Realtors, Inc.
Accepted     /s/ Bettye Parker            /s/ M. L. Compton
                 (Listing Agent)                    (Owner)
Copy given at time of signing (X)       /s/ Patricia Compton
                                                            (Owner)              "

---

Under the contract of date June 24, 1970, the complainant, Bettye Parker, had the exclusive right to sell the property through September 24, 1970. Shortly after June 24, 1970, Mr. Rogers, the defendant, became interested in the home again and

talked to Mrs. Compton, at her new home near Nashville in Davidson County, Tennessee. Mrs. Compton referred Mr. Rogers to Mrs. Parker and told him that the home had been listed with her for sale. Mr. Rogers communicated with Mrs. Parker and made a written offer to purchase the home at $27,000.00 which was less than he had originally agreed to pay for the home. This offer was submitted by Mrs. Parker to Mr. and Mrs. Compton and refused by them.

Sometime prior to September 24, 1970, Mr. Rogers and Mr. Compton reached a conditional agreement that Mr. Compton would sell the home to Mr. Rogers at the original amount contracted for less a few hundred dollars for some curtains and/or other personal property which Mr. and Mrs. Compton had removed from the home. On August 29, 1970, Mr. Compton and Mr. Rogers entered into the following contract:

"I, M. L. Compton, do hereby agree to sell my home located at 9203 Ramblewood Drive, River Oaks, Harrison, Tennessee to Ronald G. Rogers on September 25th, 1970 for the amount stated on attached contract which is a part of this contract.

Mr. Ronald G. Rogers gives to M. L. Compton a check in the amount of $500. which is hereby acknowledged and become earnest money for the sale of the property.

The contract will be null and void if by chance the agent, Betty Parker, presented a contract to Mr. Compton for the full asking price of $30,000 between now and September 24, 1970 which would bind Mr. Compton to the sale.

Before me on this 29th day of August 1970, personally appeared:

M. L. Compton and Ronald G. Rogers whom I am personally acquainted and whose signatures appear below.

/s/ M. L. Compton
/s/ Ronald G. Rogers

My Commission expires Oct. 18, 1971

/s/ Calvin Ledfer     "

The other contract referred to was the printed contract for the sale of real estate describing the home, the terms of the conveyance, and this contract was dated September 25, 1970.

The complainant, Mrs. Parker, did not procure any other purchasers for the home and on September 25, 1970, Mr. Compton completed the sale of his home to Mr. Rogers.

His Honor the Chancellor first held that the complainant was entitled to recover a commission from the defendants, Compton and wife, under the authority of 12 Am. Jur.2d, Brokers, Section 228, page 969 and 971, and the case of Dobbs v. Conyers et

al., 36 Ga.App. 511, 137 S.E. 298. He dismissed the suit against the defendant Rogers. Upon a motion to reconsider, His Honor the Chancellor changed his mind and dismissed the suit against Compton and wife under the ruling of Gudim Realty, Inc. v. Hughes et al. (1969), 284 Minn. 39, 169 N.W.2d 216. The Chancellor held that the executory contract dated August 29, 1970, constituted an exception to the general rule that executory contracts amount to a sale at the time of their execution.

We agree with the Chancellor that the complainant, Bettye Parker, is not entitled to recover under the clause of the sales agency relating to sales within 60 days aft-

er termination of the contract to persons introduced to the property by Mrs. Parker. Rogers was introduced to the property by Compton and wife before the Comptons listed the property with complainant.

We also affirm the finding of the Chancellor that under the following clause of the contract complainant was not entitled to a commission:

" . . . I agree that if this property is sold by myself or anyone else during the above stated period of time, I will pay Bettye Parker Realty Company a cash commission . . . "

Mrs. Parker did not procure a buyer ready, willing, and able to purchase the property under the terms of the listing within the three-months period provided by the contract. The contract with Rogers did not become binding and enforceable between the parties until after the expiration of the three-months period provided in the Uniform Sales Agency Contract. We agree with the Chancellor that the reasoning of the Gudim case, supra, is applicable to the case at bar.

Finally, upon the rationale of Robinson v. Kemmons Wilson Realty, 41 Tenn.App. 297, 293 S.W.2d 574, we hold that the equities of the case at bar are with the defendants and that the complainant is not entitled to a commission in this case simply because she failed to find a buyer for the Compton home.

The assignments of error are respectfully overruled and the decree of the Chancellor is affirmed at the cost of the appellant.

MATHERNE, J., concurs.

NEARN, Judge (dissenting).

I must respectfully dissent from the opinion of the majority.

As I understand the majority opinion Mrs. Parker is not entitled to a commission, although the owners agreed that if they sold the property they would pay Mrs. Parker a commission, because (a) Mrs. Parker did not procure a buyer ready, willing, and able to purchase the property under the terms of the listing, (b) the owners contract with Rogers was not binding and enforceable until after the expiration of the listing as it was a "conditional" contract and not a sale under the reasoning of Gudim Realty, Inc. v. Hughes (1969), 284 Minn. 39, 169 N.W.2d 216 and (c) under the rationale of Robinson v. Kemmons Wilson Realty Company (1956 W.S.) 41 Tenn.App. 297, 293 S.W.2d 574 the equities of the case are with the defendants.

First, the contract did not require that if the owner sold the property Mrs. Parker must procure a buyer to offset the one found by the owner before she would be entitled to a commission. To me, the contract is an agreement that requires that Mrs. Parker make a bona fide effort to sell the property and if while doing so either Mrs. Parker or the owner or anyone else finds an acceptable buyer, the owner is required to pay a commission. I see nothing violative of public policy in this agreement which would require us to void it now, since this type of agreement has been previously upheld by our Courts. See Hagan v. Trust Co. (1910) 124 Tenn. 93, 136 S.W. 993, Hutchinson v. Dobson-Bainbridge Realty Co. (1946 M.S.) 31 Tenn. App. 490, 217 S.W.2d 6, Hood v. Gillespie (1950) 190 Tenn. 548, 230 S.W.2d 997.

Second, I do not concur in the holding of the majority that the rule of the Gudim case, supra, be applied to this case or adopted by this State. I do not agree with the reasoning of the Minnesota Court in the Gudim case and care not to adopt it as the reasoning or law of this State. In my opinion, the contract in the Gudim case and the contract in the instant case were both "sales" under the terms of the exclusive agency agreement.

In the Gudim case the Court quite accurately stated the basis for exclusive agency contracts when it observed:

"It induces the broker to make an all-out effort by advertising and every other

promotional means available to stimulate the interest of prospective buyers and to effect a sale within the period of the listing by insuring that such efforts will not be uncompensated even though the owner or someone else is the procuring cause of the sale, which in the case of a nonexclusive listing would defeat the broker's right to a commission."

The Minnesota Court then, in my opinion, went on and gutted the basis for exclusive agency contracts when it reasoned that the sale contract between the owner and buyer made sans knowledge of the agent during the period of agency was not really a sale and did not affect the agent's rights because:

"Its only practical effect was the elimination of at most one purchaser, who at the time was unknown to plaintiff and had not even seen its advertising, from all potential purchasers with whom plaintiff could have arranged a sale."

That stated "practical effect" overlooks a practical fact of life. It may be, and quite often is, a fact that at a particular time there is only one particular buyer for a particular parcel of real estate at a particular price. If the owner eliminates that buyer from the agent's field of prospects the effect is devastating to the agent. Furthermore, under this reasoning an owner would be free to deal with another real estate agent so long as the other agent and his prospect did not acquire knowledge of the property through any acts of the first agent, and so long I suppose as prospective buyers were removed from the market one at a time.

Now, as to the holding in the Gudim case, that a "sale" is not a sale. The basic fact in the Gudim case is that the owner agreed with a buyer not procured by the agent to sell the property after the agent's exclusive rights expired, at less than the price listed with the agent, provided the exclusive agent did not sell the property during the agency. It was the holding of the Minnesota Court that this was not a true sale made during the term of agency because it was conditional on the happening of a future circumstance (no sale by the exclusive agent during the agency) over which neither the buyer or seller had control.

The purchase agreement was designated by the Court a "conditional agreement to sell" and therefore under the Court's reasoning it was not a "sale" as contemplated by the agency agreement. This is just beyond my credulity. The distinction is so fine that I am unable to see it with ordinary vision. My perceptive powers are unable to see through what to me is nothing less than patent bad faith. The agency contract in the Gudim case provided for a commission on *"any sale"*. The purchase agreement in the Gudim case was nothing more than a conditional sale guise to defeat a contractual obligation. Suppose the contract was conditional on title being good or the price subject to the approval of a third party such as a Court, what would have been the result? The Minnesota Court by changing nomenclature sought to change essence. In opposition to that Court's legalistic legerdemain I would paraphrase the Bard of Avon and say; What's in a name? That which is called an agreement to sell, by any other name would be a sale.

In the instant case the owners agreed "that if this property is sold by myself—I will pay Bettye Parker Realty Company a cash commission." Without questioning the wiseness of the owner in entering such an agreement and without belaboring this point any more, it just appears to me that sold it they did and a commission they owe.

Finally, I do not agree that the equities are against the complainant. Mrs. Parker advertised the defendant owners' property in the newspapers a total of thirty seven times. She held "open house" on six separate weekends. This is not a case where an agent takes a listing, does nothing and expects a commission. The equity ration-

ale of Robinson v. Kemmons Wilson Realty Company, supra, is inapplicable to the present case mainly because the facts are different. In that case the agent was operating without a listing exclusive or otherwise as the listing had expired and the property was sold by the owner when an exclusive agreement did not exist.

In my opinion the Chancellor's first impression about this matter was the correct one. Error lies in the granting of the motion to reconsider. Therefore, I dissent from the majority opinion which affirms that action of the Chancellor.