Fred GREER, Appellant,

v.

Cecil ARNOLD, Ray Hammonds, and Lonnie Napier, d/b/a Arnold, Hammonds, and Napier, Auctioneers, Appellees.

Court of Appeals of Kentucky.

April 2, 1982.

Rehearing Denied May 21, 1982.

---

John E. Smith, Lancaster, for appellant.

Cecil C. Sanders, Lancaster, for appellees.

Before GUDGEL, HOWERTON and REYNOLDS, JJ.

HOWERTON, Judge.

Greer appeals from a judgment and jury verdict awarding the auctioneers, appellees, a full commission for property which he sold through a realtor prior to the date set in a contract for an auction. The appellees were awarded the sum of $1,650.00, based on a five percent commission for a selling price of $33,000.00. The trial court equated the auction contract with an exclusive listing real estate contract and instructed the jury that if they found the existence of the contract, they should award the full commission as the measure of damages.

Greer presents three allegations of error. He first argues that it was error for the court to apply the same principles to an auction contract as to an exclusive listing contract. His second allegation is that the court erred in instructing the jury to return a verdict for the amount of the commission if they found the existence of a valid contract. Greer's final contention is that the court erred in failing to grant a judgment notwithstanding the verdict because of the requirement of KRS 330.190 that no person acting in the capacity of an auctioneer shall maintain an action for the collection of compensation for services without first alleging and proving that he was duly licensed at the time the cause of action arose.

We find reversible error in the first two arguments, but we are unable to entertain the third argument. Although Greer may be technically correct, the attack on the sufficiency of the pleadings was not raised in the trial court prior to the completion of the trial. We will not consider it at this time.

On August 20, 1979, Greer signed a contract with the auctioneers authorizing them to auction a house and lot and personal property. The jury found that the contract had been duly executed. We see no necessity in disturbing that finding. On August 27, Greer gave the real estate company of Snyder and Howard an exclusive right to sell his house and lot. The realtors negotiated a sale on August 28, and a deed was executed pursuant to the contract. The auctioneers auctioned the personal property of Greer on September 29, 1979, and on October 2, 1979, sent him a check for $1,833.00, after deducting their commission and the taxes. On August 7, 1980, Arnold wrote Greer requesting payment of a commission on the sale of the real estate, and when Greer refused to make payment, this suit was filed.

At the conclusion of all of the evidence, Greer requested instructions which would have allowed the auctioneers to recover their expenses and a reasonable compensation for services rendered, if the jurors found that he had executed an auction contract which gave them an exclusive right to sell his property. He also requested an instruction that would have denied any recovery, if the jurors had found that he had signed only a blank auction contract or that the contract was a nonexclusive agreement.

The trial court rejected the tendered instructions and instructed the jurors to find for Greer only if they concluded there was no contract. The troublesome instruction, and the one on which the jury's verdict was based, reads as follows:

You are instructed that if you find from the evidence that the defendant entered into an auction sales contract with the plaintiffs to sell the property described in said evidence and that thereafter the defendant sold the said property for $33,000.00 without the consent or permission of the plaintiffs, in that event you shall find for the plaintiffs and award them a commission of $1,650.00 which is five percent of the price for which the property sold.

Some sales contracts for real estate are "exclusive," as was the contract with Snyder. It specifically provided that Snyder would have the exclusive right and privilege to sell the property for a period of 60 days. It further provided that if the property was sold before the expiration of the agreement by someone other than Snyder, he would nevertheless receive his commission based on the selling price. It also provided for payment of the commission, if a purchaser to whom he had shown the property bought it within 120 days after the expiration of the exclusive listing. An exclusive sales contract clearly spells out the measure of damages as the amount of the commission.

Such is not the case for this auction contract. The agreement was clearly an auction sales contract. It generally indicated what was to be sold, when the auction was to take place, and the amount of the commission. There is nothing in the agreement that says the auctioneers have an exclusive right to sell the property, and at best, the agreement is ambiguous as to whether the auction, if held, would be absolute and without any reservation.

Even if the auction is to be absolute, this does not give it the same stature as an

explicitly exclusive contract for the sale of real estate by a realtor or broker. A breach of this auction contract is to be treated under general principles of damages for a breach of contract. Although Greer's tendered instructions confused the issue of entitlement to damages on the basis of an "exclusive" or "nonexclusive" right to sell the property, his measure of damages was basically correct. The auctioneers would be entitled to recover their expenses and a reasonable compensation for services rendered, in the event of a breach.

In *Becker v. Crabb*, 223 Ky. 549, 4 S.W.2d 370 (1928), the auctioneer had a provision in his contract which read, ". . . the highest price obtainable on sale day is to be confirmed by the owner, regardless of what the price may be." It is this type provision that makes an auction absolute. The owner nevertheless stopped the sale and refused to execute any deeds for property which had been bid upon. The auctioneer requested damages in the amount of what his commission might reasonably have been expected to be had the auction been allowed to take place. The opinion provides, at 223 Ky. 551, 4 S.W.2d 370:

> While the contract provided that Miss Becker would confirm the sale at the highest price obtainable, it did not take from her the right to stop the sale before the property was knocked down, and where the property was selling at a ruinous sacrifice. In fact she did stop the sale.

If a party can withdraw from selling his property during an absolute auction, he can certainly withdraw or dispose of his property prior to the beginning of the auction.

The *Becker* case was retried and appealed as *Becker v. Crabb's Trustee in Bankruptcy*, 231 Ky. 354, 21 S.W.2d 438 (1929). The auctioneer was awarded $2,350.00 in damages, but the reported appeal makes no mention of the measure of damages. *Becker v. Crabb, supra*, was cited in 7 Am. Jur.2d, *Auctions and Auctioneers*, § 61 (1980), at 413, for the proposition, ". . . that an auctioneer may recover against an owner who withdraws property from the auction sale for his reasonable compensation or expenses, although he is not entitled to his commissions."

37 A.L.R.2d 1049 (1954), provides an annotation on the withdrawal of property from an auction sale. Section 8 covers liability and remedies. On pages 1057–58, we read:

> Thus, where the owner of goods withdraws them from an auction sale prior to its commencement, he is liable to the auctioneer for any expenses incurred in preparation for the sale, but not for commissions. *Girardey & Co. v. Stone*, (1872), 24 La.Ann 286.

> And where the owner stopped the sale to prevent a ruinous sacrifice of his property the court held in *Becker v. Crabb* (1928) 223 Ky. 549, 4 S.W.2d 370, that the auctioneer was entitled to recover from the owner expenses and reasonable compensation for his services only, . . . .

The auction contract in this case is not comparable to an exclusive listing. The auctioneers are not entitled to recover a commission based on the selling price of the real property, which was sold in breach of their contract. The appellees may recover only their expenses in the preparation for a sale and a reasonable compensation for any services.

We are satisfied with the determination that Greer breached a valid contract. This case is therefore reversed and remanded for a new trial on the issue of damages only.

All concur.