# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

FILED

August 5, 1998

Cecil W. Crowson
Appellate Court Clerk

MARVIN E. ALEXANDER )
d/b/a ALEXANDER AUCTIONS & )
REAL ESTATE SALES, )
                              )
        Plaintiff/Appellee, )
                              )    Appeal No.
                              )    01-A-01-9710-CH-00590
VS. )
                              )    Giles Chancery
                              )    No. 9087
JOHN HOPKINS and RHONDA )
HOPKINS, individually and d/b/a )
RICHLAND CREEK SOD FARM, )
                              )
        Defendants/Appellants. )

APPEALED FROM THE CHANCERY COURT OF GILES COUNTY
AT PULASKI, TENNESSEE

THE HONORABLE JIM T. HAMILTON, JUDGE

THOMAS W. HARDIN
102 West 7th Street
P. O. Box 692
Columbia, Tennessee 38402-0692
       Attorney for Plaintiff/Appellee

M. ANDREW HOOVER
JOHN P. DAMRON
134 North Second Street
P. O. Box 288
Pulaski, Tennessee 38478

AFFIRMED AS MODIFIED
AND REMANDED

BEN H. CANTRELL, JUDGE

CONCUR:
TODD, P.J., M.S.
KOCH, J.

# O P I N I O N

A licensed auctioneer and real estate broker filed suit against the defendant landowners for breach of an auction contract, because the defendants sold their land prior to the scheduled auction without his participation. The trial court held that the auctioneer was entitled to the anticipated commission amount. We affirm the trial court's holding that the property owners are liable, but we modify the amount of damages.

## I. An Auction that Never Happened

All the facts that are material to this case are undisputed[1], and its resolution thus turns entirely on questions of law. On August 1, 1995, John Hopkins and his wife Rhonda Hopkins signed an auction contract prepared by Marvin Alexander, sole proprietor and operator of Alexander Auctions and Real Estate Sales. Mr. Alexander is a licensed auctioneer and a licensed real estate broker. Both licenses are required to auction real estate in Tennessee. Tenn. Code Ann. § 62-19-102.

The contract authorized Mr. Alexander to sell at absolute auction a 416.9 acre tract of land and all the equipment associated with the Hopkins' operation of a sod farm on that land. Tracts of 55, 63 and 178 acres are also mentioned in the contract following the language "owner may include . . . ." The consideration section of the contract states that:

> "[p]arties of the second part are to sell the above described property at public auction according to the terms announced at date of sale and are to receive as compensation for selling the above described property the sum of 5% of the proceeds from said sale, said sum of money or percentage agreed upon to be paid parties of the second part upon completion of said sale."

---

[1]The parties dispute whether a date certain for the auction was established before the appellant told the appellee he had a prospective buyer for the property; but we do not conceive this to be a determinative fact.

Other parts of the contract provide that the advertising for the sale was to be paid 50% by the owners and 50% by the auction company; that pre-auction set up labor was to be paid by the auction company; and that the auction date was to be set sometime between September 15th and October 28th, 1995.

After the contract was executed, Mr. Alexander began making preparations for the auction, including inspecting the land, making plans to divide it into seven tracts, designing brochures and print advertisements for inclusion in a number of publications, and collecting and washing the equipment.

Sometime later, Mr. Hopkins notified Mr. Alexander that he been talking privately to some individuals about purchasing the land, and that he would sell to them if they offered him the price he wanted. He advised Mr. Alexander to stop any further preparations for the auction, pending the results of his negotiations. Mr. Alexander was unhappy with this development, and Mr. Hopkins rebuffed several attempts by him to learn the identity of the purchasers or the proposed sales price.

The auctioneer armed himself with a mini-cassette tape recorder and surreptitiously taped a subsequent conversation with Mr. Hopkins. During the conversation, Mr. Alexander stated that if the property was sold, he considered himself entitled to his full commission. Mr. Hopkins argued that Mr. Alexander had not earned the full commission, and offered to pay him 2 1/2% of the closing price. He also offered to let Mr. Alexander sell the 55 acre tract at auction, as well as the remaining equipment, to compensate him for any grievance he might have about the loss of the larger tract, but Mr. Alexander angrily refused.

At some point during these negotiations, the auction contract was amended by crossing out the word "may" before mention of the 55 acre tract, and the amendment was initialed by both parties. However the auction was never held.

Mr. Hopkins obtained a sales contract for the 416.9 acre property and the 63 acre tract in late September. The contract provided for a sales price of $400,000 cash, and made the seller responsible for any real estate commission owed to Alexander Realty and Auction. The sale closed on October 19, 1995. Mr. Hopkins subsequently put $15,800 of the proceeds into an escrow account to take care of his obligation to Mr. Alexander. At about the same time, Mr. Hopkins sold some of his equipment for approximately $77,000.

Mr. Alexander filed suit for his commission. The trial court found that under general principles of contract law, he was entitled to the benefit of his bargain, and granted the plaintiff damages of $23,914.46 as a 5% commission based upon the sales price of $477,000 for land and equipment. On the auctioneer's Motion to Alter or Amend, the court found that Mr. Alexander was also entitled to a 5% commission on the unsold 55 acre tract, as well as on the remaining equipment. The court accordingly increased the judgment by $15,300, to $39,214.46. This appeal followed.

## II. The Governing Law

The appellants argue that the trial court erred in deciding this case under general principles of contract law rather than under the specific rules that have evolved to govern real estate listing contracts. They also note that the auction contract, which was drafted by the appellee, does not prohibit the owner from selling the property himself.

Under the law applicable to real estate brokers in Tennessee, a broker may be entitled to receive a commission when the property is sold by the owner himself, but only when the listing contract contains very specific language to that effect. *Turnblazer v. Smith,* 379 S.W.2d 772, 214 Tenn. 277 (1964). Even language granting the broker an exclusive agency is not sufficient to guarantee him a

commission, unless he can show that he was the procuring cause of a completed sale. *Hood v. Gillespie*, 230 S.W.2d 997 190 Tenn. 548 (1950).

Mr. Alexander admits that he neither procured nor introduced the ultimate buyer to the seller, and judging both from his testimony and that of Mr. Hopkins, it seems highly unlikely that any of his promotional efforts contributed in any way to the ultimate sale. Thus, if we accepted the appellants' argument, we would be compelled to find that Mr. Alexander is not entitled to a commission.

The appellee notes, however, that there are important differences between ordinary real estate listings and an absolute auction contract. While ordinary listings are subject to uncertainties or contingencies, an absolute auction contract creates a date certain for sale, there is little doubt that the property will be sold, and the terms (though not the price) are preset.

There is apparently no Tennessee authority on the question of whether real estate auction contracts are to be treated as ordinary contracts, or in the same way as real estate brokerage listings. The appellee urges us to adopt the logic of a Wisconsin case, *Thorp Sales Corporation v. Gyuro Grading Co.,* Inc. 331 N.W.2d 342 (Wisc. 1983), as persuasive authority for the proposition that they should be interpreted under ordinary contract principles.

As the appellant points out, however, the *Thorp* case only involved chattels, and not real property, and the agreement in that case was characterized as "an irrevocable agreement to produce specified goods at a scheduled auction," whereas the contract in the present case contained no language as to irrevocability.

We also note that there is another line of authority which holds that "if the property is sold prior to the auction by someone other than the auctioneer, the auctioneer may recover his expenses and reasonable compensation for his services,

but not his commission under the contract." 7 Am. Jur. 2d *Auctions and Auctioneers* § 75. This line of authority is exemplified by the case of *Greer v. Arnold*, 633 S.W.2d 75 (Ky. App. 1982).

After weighing the two competing theories, we are not inclined to adopt a doctrine that would suddenly subject auctioneers to the rules that have slowly evolved in Tennessee to govern the rights of property owners and brokers in regard to each other. We note that such a ruling would tend to undermine the certainty that distinguishes auction sales from brokered real estate sales, and which makes auctions the preferred means of disposing of property in many instances. We also believe that a property owner who wishes to keep his options open may contract to limit his liability in case of sale before auction.

In affirming the trial court's ruling on liability, we would like to underline a distinction that the *Thorp* court made explicit. Since an auction contract is to be treated under ordinary principles of contract law, the auctioneer is not entitled to his commission per se; he is entitled to the damages he has suffered from the defendant's breach of contract. As the court said, however,

> ". . . the agreed-upon commission is an important factor in determining what would have been necessary to give the injured party the benefit of the bargain by putting it in as good a position as it would have been in had the contract been performed."

331 N.W.2d at 347.

### III. The Calculation of Damages

The initial order of the trial court granted the auctioneer "damages representing five (5%) percent of the proceeds of the sale of that portion of the real estate and equipment sold by the Defendant." However, the proof shows that the real estate sold by the defendants included 63 acres that they were not obligated to submit to the auctioneer, and which was therefore not part of the bargain.

The award should thus be recalculated to exclude any amount attributable to the sale of the 63 acres. The appellant is also entitled to have his damages reduced by the amount the auctioneer saved by virtue of not conducting the auction.

Since the sales contract does not value the 63 acre tract separately from the 416.9 acre tract, we adopt the appellants' suggestion that we place a uniform per/acre valuation on the property. For the total $400,000 transaction, this comes to $833.51 per acre for 479.9 acres. If we recalculate, and multiply the price per acre by the 416.9 acres, we reach a figure of $347,490.32. Five percent of that figure is $17,374.53. To that figure we must add 5% of the $77,000 sales price on the equipment, or $3,850. After adding the two elements of the auctioneer's damage, we reach a total of $2l,224.53. From this sum we must subtract the money he would have spent if he had conducted the auction as planned, because the defendants' breach has saved him this amount. He concedes his savings to be $3,400, and when we subtract, we reach net damages of $17,824.53.

As to the $15,300 added to the judgment on the motion to alter or amend, we note that a commission of that amount corresponds to a $306,000 value for the remaining equipment and the 55 acre tract included in the original agreement. The final order includes a finding that the value "is the value agreed upon between the parties prior to the date of the auction."

We cannot find in the record an agreement as to the value of the property, and the parties do not cite the part of the record where the agreement can be found. There are some estimates as to the value of the individual properties, but we think the estimates are too unreliable and speculative to support a judgment for a commission based on the value. For instance, prior to the sale the parties estimated that the 416 acre tract was worth $520,000 and the 63 acre tract was worth $94,000. The appellants actually sold these two parcels for $400,000. We do not

think the amount of the plaintiff's damages for the sale of the 55 acre tract and the balance of the equipment have been proven to a reasonable certainty. *See Buice v. Scruggs Equipment Co.*, 267 S.W.2d 119 (Tenn. App. 1953).

The amount of the plaintiff's damages is modified as indicated herein. In all other respects the lower court's judgment is affirmed. Remand this cause to the Chancery Court of Giles County for further proceedings. Tax the costs on appeal equally to the parties.

_____
BEN H. CANTRELL, JUDGE

CONCUR:


_____
HENRY F. TODD, PRESIDING JUDGE
MIDDLE SECTION


_____
WILLIAM C. KOCH, JR., JUDGE